705 S.E.2d 583

**STATE of West Virginia, Plaintiff Below, Appellee**

v.

**Richard Lewis MORRIS, Defendant Below, Appellant.**

**No. 35339.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 15, 2010.

Decided Nov. 19, 2010.

Joel Weinstein, Esq., John P. Adams, Esq., Public Defender Corporation, Martinsburg, WV, for Appellant.

Darrell McGraw, Jr., Esq., Attorney General, R. Christopher Smith, Esq., Assistant Attorney General, Charleston, WV, for Appellee.

PER CURIAM:

Richard Lewis Morris, Appellant, appeals his conviction for one count of felony Driving Under the Influence Causing Death and two counts of misdemeanor Driving Under the Influence Causing Injury. Herein, he as-

serts that the circuit court erred in permitting the admission of hearsay testimony, that the circuit court erred by failing to rule on a motion *in limine* thereby allowing a witness to testify, that the police failed to preserve potentially exculpatory evidence, and that the circuit court has not yet ruled on a Rule 35 motion for a reduction or correction of sentence. This Court has before it the petition for appeal, all matters of record and the briefs and argument of counsel. For the reasons expressed below, the Appellant's conviction is affirmed.

## I.

### FACTUAL AND PROCEDURAL HISTORY

This case involves a fatal car accident that occurred on September 20, 2007, on Route 340 in Jefferson County. When Deputy Sheriff Vincent Henry Tiong responded to the emergency call, he found Cynthia Hose and David Weiss entrapped in their overturned car, a red 1997 Hyundai Elantra. Appellant and his wife, Tammy Green–Morris, who were driving a white 1997 Nissan Maxima, were also found at the scene.[1] When Deputy Tiong spoke to the Appellant, he noted that his eyes were glassy and that there was a strong odor of alcohol on Appellant's breath. Appellant appeared to be laughing. When asked what was funny, Appellant first said, "nothing," but then said "the accident." Green–Morris also had an odor of alcohol on her breath, and had bloodshot eyes and slurred speech.

As a result of the accident, Mr. Weiss suffered multiple lacerations on his arms, three broken ribs, and a contusion on his spine. The driver, Cynthia Hose, suffered serious injuries as a result of the accident and died 30 days later. According to the testimony of Mr. Weiss, Ms. Hose suffered from a severed spinal cord and brain damage before she died, among other injuries. Appellant was indicted for one count of felony DUI Causing Death and two counts of misdemeanor DUI Causing Injury. His sole de-

fense at trial was that he was not driving the vehicle at the time the accident occurred.

At trial, Deputy Tiong testified that he determined the causes of the accident to be speed and failure to maintain control. Paula Bryant, a medical technologist at Jefferson Memorial Hospital, testified that she performed a toxicology test and found Appellant's blood alcohol level to be .20 grams/deciliter, which is above the legal limit for operating a vehicle. David Bennett, a phlebotomist at Jefferson Memorial Hospital who drew blood from Appellant on the night of the accident, testified that he noted bruising on Appellant's chest. When asked at trial what kind of bruising was on Appellant's chest, Bennett testified "seat belt," ... "[l]ike he was wearing a seat belt on his chest all the way down to his hip." Bennett testified that the bruising was on Appellant's left shoulder to right hip. Mr. Bennett also testified that Appellant appeared intoxicated and acted in a combative manner.

Appellant's wife, Tammie Green–Morris, testified at trial that the Appellant was driving the Nissan Maxima on the night of the accident. She stated that they had been drinking most of the day and that according to the speedometer, Appellant was driving 120 miles per hour. She further testified that after the accident, Appellant asked her to run from the scene. Green–Morris testified that she suffered bruising from her right shoulder to underneath her left breast. She was eventually convicted of knowingly permitting driving under the influence.

Two witnesses, Stacey Tothill and Jim Lewis, testified that the Nissan Maxima sped past them at a very high rate of speed. Neither directly witnessed the accident but saw the accident scene following the crash. Mr. Tothill testified that he estimated the Nissan Maxima was traveling more than twenty miles per hour over the speed limit, and Mr. Lewis stated that it passed him at a speed of more than 100 miles per hour.

Following a jury trial, on October 8, 2008, the jury found Appellant guilty of one count of DUI Causing Death and two counts of DUI Causing Injury. On January 21, 2009,

---

1. Deputy Tiong observed that the white Maxima was in the left lane of the intersection of Route 340 and Halltown Road and the red Elantra was on its rooftop on the shoulder.

Appellant was sentenced to 2 to 10 years on the felony count, and 1 year on each of the two misdemeanor counts, to run consecutively.

## II.

## STANDARD OF REVIEW

 "Concerning our standard of review of the circuit court's exclusion of evidence at issue, we note that '[r]ulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.'"

*State v. Guthrie*, 205 W.Va. 326, 332, 518 S.E.2d 83, 89 (1999)(*quoting State v. Louk*, 171 W.Va. 639, 643, 301 S.E.2d 596, 599 (1983), *citing* Syl. Pt. 2, *State v. Peyatt*, 173 W.Va. 317, 315 S.E.2d 574 (1983)).

> "The action of a trial court in admitting or excluding evidence in the exercise of its discretion will not be disturbed by the appellate court unless it appears that such action amounts to an abuse of discretion." Syl. Pt. 6, *State v. Kopa*, 173 W.Va. 43, 311 S.E.2d 412 (1983).

Syl. Pt. 1, *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999). Furthermore,

> [w]hether a witness is qualified to state an opinion is a matter which rests within the discretion of the trial court and its ruling on that point will not ordinarily be disturbed unless it clearly appears that its discretion has been abused.

Syl. Pt. 4, *State v. Wood*, 194 W.Va. 525, 460 S.E.2d 771 (1995)(internal citations omitted).

## III.

## DISCUSSION

In the instant appeal, Appellant alleges four assignments of error. We will address each of them in turn.

### A. *Hearsay Evidence*

 In his first assignment of error, Appellant asserts that the circuit court erred in allowing Deputy Tiong to testify regarding a statement made by Brenda Engle, a treating nurse on the night of the accident, detailing bruising found on the Appellant's chest. Appellant maintains that the admission of this testimony constituted hearsay evidence that violated his constitutional right to confront witnesses.

The following testimony was provided by Deputy Tiong at trial:

> Prosecutor: Corporal Tiong, why did you charge Mr. Morris with driving the automobile that caused this accident?
>
> Tiong: I received information from the nurse from marks she observed from him.
>
> Prosecutor: What kind of marks?
>
> Tiong: She observed that there was what appeared to be seat belt marks going up the left area down to the lower right area which showed the possibility of wearing a seat belt in the driver's side.

At the time said testimony was offered, Appellant objected on hearsay grounds. The State responded that Ms. Engle was supposed to testify later in the trial.[2] Additionally, the State asserted that the testimony was not being offered for the truth of the matter asserted. Rather, it was offered to show why Officer Tiong charged Mr. Morris. The State also maintained that it had another witness, Mr. Bennett, who would also testify regarding the location of bruises he observed on the Appellant's chest. In reviewing the record before us, it appears that the circuit court permitted Officer Tiong to present this testimony not for the truth of the matter asserted, but to show why he charged Mr. Morris. Accordingly, we cannot state that circuit court abused its discretion in permitting such testimony for this limited purpose.

Pursuant to Rule 801(c) of the *West Virginia Rules of Evidence*, hearsay is defined as follows:

> Hearsay. "Hearsay" is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in

---

**2.** The record reflects that although Nurse Engle was expected to testify at trial, she defied a subpoena and did not appear to testify.

evidence to prove the truth of the matter asserted.

W.Va.R.Evid. 801(c). This Court has held:

Generally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action; 2) the statement is not hearsay under the rules; or 3) the statement is hearsay but falls within an exception provided for in the rules.

Syl. Pt. 1, *State v. Maynard,* 183 W.Va. 1, 393 S.E.2d 221 (1990).

▇ In the instant case, we find that Officer Tiong's testimony regarding Nurse Engle's observations did not constitute hearsay evidence. The testimony was not offered to prove the truth of the matter asserted, but rather as an explanation as to why the Appellant was arrested and as to the background of the investigation. This Court has held that testimony by police officers involving matters they learned from other persons offered merely to explain prior conduct in carrying out the investigation is not hearsay. *State v. Phelps,* 197 W.Va. 713, 722, 478 S.E.2d 563, 572 (1996). "[T]he hearsay rule excludes hearsay evidence only when offered 'as evidence of the truth of the matter asserted'; and does not operate against such testimony offered for the mere purpose of explaining previous conduct." Syl. Pt. 1, *State v. Paun,* 109 W.Va. 606, 155 S.E. 656 (1930)(citing 16 C.J. *Criminal Law* § 1233).[3]

Additionally, Appellant alleges that the circuit court's admission of Officer Tiong's testimony regarding Nurse Engel's observations violated his Sixth Amendment right to confrontation. However, because Officer Tiong's testimony regarding Nurse Engle's statements was properly admitted for purposes other than establishing the truth of the matter asserted, the Confrontation Clause does not bar the use of these statements. *Crawford v. Washington,* 541 U.S. 36, 59 n. 9, 124 S.Ct. 1354, 1369 n. 9, 158 L.Ed.2d 177 (2004)(" '[t]he [Confrontation] Clause ... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.' *Tennessee v. Street,* 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.E.2d 425 (1985)").[4] Moreover, the record reveals that the Appellant did not even present a Confrontation Clause objection during the trial. The only objection Appellant made at the time this testimony was offered was an objection on hearsay grounds. This Court has held that "[o]bjections to evidence based on hearsay, ... are simply not the same as objections based on the Confrontation Clause." *State v. Ladd,* 210 W.Va. 413, 428, 557 S.E.2d 820, 835 (2001). Accordingly, we find no error in the admission of said testimony at the trial in this matter.[5]

---

3. However, normally, "[t]he receipt of this type of evidence should be determined under principles of relevancy pursuant to Rules 401–403." *State v. Phelps,* 197 W.Va. at 722, 478 S.E.2d at 572 (*citing* 2 Franklin Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 8–1(A)(5) (3rd ed.1994)). In this particular case, regardless of whether or not evidence pertaining to why Officer Tiong charged Appellant was relevant, we find that the admission of such testimony, even if irrelevant, would have been harmless error, for reasons outlined more fully below in footnote 5, *infra.*

4. In examining the importance of the Confrontation Clause and its purpose, this Court has explained:

The mission of the Confrontation Clause found in the Sixth Amendment to the United States Constitution and Section 14 of Article III of the West Virginia Constitution is to advance a practical concern for the accuracy of the truth-determining process in criminal trials, and the touchstone is whether there has been a satisfactory basis for evaluating the truth of the prior statement. An essential purpose of the Confrontation Clause is to ensure an opportunity for cross-examination. In exercising this right, an accused may cross-examine a witness to reveal possible biases, prejudices, or motives.

Syl. Pt. 1, *State v. Mason,* 194 W.Va. 221, 460 S.E.2d 36 (1995).

5. Even if this Court were to determine that the testimony of Deputy Tiong regarding his conversation with Nurse Engle was hearsay testimony that was offered for the truth of the matter asserted, the admission of such evidence would have been harmless error because, as explained more fully below, the same fact was testified to and proven by other witnesses, including phlebotomist Bennett and Appellant's wife. *See* Syl. Pt. 4, *State v. Helmick,* 201 W.Va. 163, 495 S.E.2d 262 (1997)(An error in admitting hearsay evidence is harmless where the same fact is proved

### B. Expert Witness Testimony

■ Appellant next contends that the circuit court erred in allowing the testimony of David Bennett, the phlebotomist who drew blood from him on the night of the accident. Specifically, Appellant contends that the admission of the testimony of Mr. Bennett concerning the bruising Appellant suffered violated the *West Virginia Rules of Criminal Procedure* and his Due Process rights on the grounds that Mr. Bennett's testimony was expert in nature, yet no notice was given under Rule 16(a)(1)(E) of the *West Virginia Rules of Criminal Procedure* [6] and no foundation for his expertise was laid at trial. Appellant takes issue with the fact that the trial court never ruled on his motion *in limine* on this issue.

■ According to our review of the record, a motion *in limine* was filed by the Appellant on September 26, 2008. However, the circuit court never ruled on the motion and the Appellant did not object when the State offered the testimony of Mr. Bennett at trial. We find that the Appellant's failure to present an objection at trial constituted a waiver of this issue. *See State v. Parsons,* 181 W.Va. 56, 63, 380 S.E.2d 223, 230 (1989)(finding that where no adverse ruling on a defendant's motion *in limine* is made, an objection is required when the evidence is offered at trial) *citing State v. Clark,* 170 W.Va. 224, 292 S.E.2d 643 (1982)). However, even if this issue had not been waived, we find no error on the circuit court's behalf in admitting such testimony under Rule 701 of the *West Virginia Rules of Evidence.*

Rule 701 of the *West Virginia Rules of Evidence* provides the following:

If the witness is not testifying as an expert, his or her testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

W.Va.R.Evid.701. This Court has held the following with respect to lay testimony:

In order for a lay witness to give opinion testimony pursuant to Rule 701 of the *West Virginia Rules of Evidence* (1) the witness must have personal knowledge or perception of the facts from which the opinion is to be derived; (2) there must be a rational connection between the opinion and the facts upon which it is based; and (3) the opinion must be helpful in understanding the testimony or determining a fact in issue.

*Nichols,* supra, at Syl. Pt. 2.

A review of the record before us indicates that Mr. Bennett's testimony was not expert in nature, but was rather simply lay opinion testimony under Rule 701 of the *West Virginia Rules of Evidence.* At trial, Mr. Bennett merely provided testimony regarding the bruises he personally observed on the Appellant was drawing blood from him. As stated above, Mr. Bennett testified, based upon his observation while taking blood from Appellant in the hospital, that the latter had a bruise on his chest from the left shoulder to

---

by an eyewitness or other evidence clearly establishes the defendant's guilt). Mr. Bennett testified that he noted bruising that went from Appellant's left shoulder to his right hip. Likewise, Ms. Green–Morris, Appellant's wife, testified that Appellant was the driver of the vehicle, and that she sustained bruising from her right shoulder to underneath her left breast, marks which are consistent with being a vehicle passenger.

Furthermore, the record reflects that the Appellant had ample opportunity to cross-examine Mr. Bennett regarding his observations of bruising which also indicated he was the driver of the vehicle, and Ms. Green–Morris regarding her assertions that the Appellant drove the vehicle. When a constitutional right is involved, the test is stated to be "... whether the apparent error did not, beyond a reasonable doubt, prejudice the

accused at trial." *State v. Boyd,* 160 W.Va. 234, 244, 233 S.E.2d 710, 717–18 (1977). "Errors involving deprivation of constitutional rights will be regarded as harmless only if there is no reasonable possibility that the violation contributed to the conviction." Syl. Pt. 20, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

**6.** *West Virginia Rule of Criminal Procedure* 16(a)(1)(E) states the following:

(E) Expert Witnesses. Upon request of the defendant, the state shall disclose to the defendant a written summary of testimony the state intends to use under Rule 702, 703, or 705 of the Rules of Evidence during its case in chief at trial. The summary must describe the witnesses' opinions, the bases and reasons therefor, and the witnesses' qualifications.

the right hip, resembling a seat belt. Mr. Bennett did not require any medical or scientific expertise to testify to this, as the testimony was rationally based on the perception of Mr. Bennett to help the jury with regard to a fact in issue. For these reasons, the circuit court did not abuse its discretion in admitting the testimony of Mr. Bennett.

### C. Preservation of Evidence

■ In his third assignment of error, Appellant alleges that the circuit court erroneously denied his motion *in limine* requesting that the circuit court exclude the admission of Appellant's hospital records which indicated that he had bruising suggestive of a person wearing a driver's side seatbelt, on the grounds that the vehicle in which the Appellant was riding was not placed into police custody during their investigation and was destroyed. Appellant alleges that this caused him to be unable to examine the vehicle in order to refute the State's contention that the Appellant was the person driving the vehicle. Specifically, Appellant alleges that the evidence that was destroyed included the following: suspected blood evidence on the left side of the driver's seat consistent with the laceration to the back of the head of Tammy Green–Morris as documented in Tiong's report and medical records; verification through measurement of the precise location of the seat positioning apparent in the photographs confirming that the driver's side seat was pulled up significantly in contrast with the passenger side seat; the cell phones on the floor of the driver's side and the passenger side seat of the vehicle; and a Budweiser beer can on the floor of the driver side of the vehicle floor.[7]

■ In support of his argument, Appellant first contends that the State had a duty to preserve the vehicle under *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995), because it contained potentially exculpatory evidence. Syllabus Point 2 of *Osakalumi* provides:

When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

*Id.*

In review of the record before us, we find that the circuit court did not abuse its discretion in denying Appellant's motion *in limine* on this issue. The circuit court found that the State never took possession of the vehicle, as it was towed by a private towing company. Thus, the court believed that there was no duty by the State to preserve it. Additionally, in discovery, the State provided thirty-seven photographs of the accident scene and the vehicle in question. In ruling on the Appellant's motion, the circuit court specifically found the following:

… I must say that in this case I don't believe the State took possession of that vehicle. There was a crash scene with injuries but not a death at that time. Police routinely, routinely investigate accidents and if they were to take all the cars into some sort of custody then they would have a large inventory of smashed up vehicles indeed.

7. Appellant generally asserts that there were inconsistencies in Green–Morris' testimony and that she received a significant plea deal in exchange for testifying. Green–Morris pled guilty to Permitting DUI with regard to the instant matter.

Generally speaking, they are released to insurance companies and to the parties. It sounds like in this case that the owner of the vehicle being your client's spouse okayed the car being smashed up and what we are left with is the impression from the hospital as to the type of bruising, the possibility of how it came about, and I think that the fact that the way it was destroyed does not make it excludable because it just basically impacts upon the weight that a jury might attach to it not knowing more than we know about it.

So I don't see this really being—I don't think even comes close to bad faith or even frankly I'm not even sure that it's negligent. It's so close to the conduct of normal police investigation.

■ We cannot state that the circuit court's ruling on this issue was an abuse of discretion. Indeed, even if the vehicle was in the State's possession and the Appellant was able to establish that the State had a duty to preserve and produce the vehicle, the Appellant has still not established the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available, the thirty-seven photographs presented at trial. Although Appellant takes issue with the fact that various items in the car were not turned over to him, such as a beer can and cell phones, we are hard pressed to find the exculpatory or impeachment value in these items.[8] For example, the testimony at trial revealed that the Appellant and his wife had been drinking that day, and the Appel-

lant does not state with any convincing particularity what the potential value of the cell phones would be. Additionally, the red stain on the driver's seat would have little exculpatory value even if it had been subjected to DNA testing, as it does not serve to exclude Appellant from being the driver of the vehicle.[9] Furthermore, taking the phlebotomist's testimony regarding the Appellant's bruising into consideration, there was certainly other sufficient evidence produced at trial to sustain the conviction.[10]

■ Moreover, with respect to Appellant's additional allegation that the destruction of the vehicle also constitutes a *Brady* violation [11], we find no merit to this argument. The United States Supreme Court has held the following regarding *Brady* violations:

A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused. See 373 U.S. at 87 [83 S.Ct. 1194]. This Court has held that the *Brady* duty extends to impeachment evidence as well as exculpatory evidence, *United States v. Bagley*, 473 U.S. 667, 676 [105 S.Ct. 3375, 87 L.Ed.2d 481] (1985), and *Brady* suppression occurs when the government fails to turn over even evidence that is "known only to police investigators and not to the prosecutor," *Kyles [v. Whitley]*, 514 U.S. [419] at 438 [115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)]. See *id.*, at 437 [115 S.Ct. 1555] ("[T]he individual prosecutor has a duty to learn of any favorable evidence known to the oth-

8. In determining whether evidence is exculpatory, the question is whether such evidence, "if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt." *State v. Hall*, 174 W.Va. 787, 790, 329 S.E.2d 860, 863 (1985) (*citing* Syl. Pt. 4, *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982)).

9. As the State argued before the trial court:
"[L]et's say it was her blood, it could have gotten there a lot of different ways, perhaps she touched her hand to the back of her head and then touched the seat, perhaps it got there on the way out of the car, perhaps he touched her head while he was getting out of the car, I don't think that the blood, if it was blood even under that driver's seat is anyway proof that Ms. Morris was driving as opposed to Mr. Morris . . ."

10. We also find that the trial court's instruction was sufficient to protect the Appellant's due process rights. Subsequent to the circuit court's denial of Appellant's motion *in limine* regarding destruction of the vehicle, Appellant asked the Court for a cautionary instruction, which the court permitted. In its instructions to the jury, the circuit court stated the following:

If you find that the State has lost, destroyed or failed to preserve any evidence whose contents or quality are material to the issue in this case, then you may draw an inference unfavorable to the State which in itself may create reasonable doubt as to the Defendant's guilt.

11. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

ers acting on the government's behalf in the case, including the police"). "Such evidence is material 'if there is a reasonably probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different,'" *Strickler v. Greene*, 527 U.S. 263, 280 [119 S.Ct. 1936, 144 L.Ed.2d 286] (1999)(*quoting Bagley, supra*, at 682 [105 S.Ct. 3375] (opinion of Blackmun, J.)), although a "showing of materiality does not require demonstration by a preponderance that disclosure of the. suppressed evidence would have resulted ultimately in the defendant's acquittal," *Kyles*, 514 U.S. at 434 [115 S.Ct. 1555]. The reversal of a conviction is required upon a "showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.*, at 435 [115 S.Ct. 1555].

*Youngblood v. West Virginia*, 547 U.S. 867, 869–70, 126 S.Ct. 2188, 2190, 165 L.Ed.2d 269 (2006).

As previously stated, the vehicle in question was not in the possession of the State, and based on the specific set of circumstances in this case, the State did not have a duty to preserve it. Rather, as an attempt to preserve adequate evidence of the accident scene, the police took thirty-seven photographs of the scene and the vehicle, which were produced to the Appellant during discovery. Because the Appellant has not, as stated more fully above, sufficiently demonstrated the potential exculpatory value of the items at issue in the vehicle, we find that the Appellant has not demonstrated that the State failed to disclose evidence materially favorable to the accused under *Brady*. For all these reasons, we find that the circuit court did not abuse its discretion in denying Appellant's motion *in limine* on this issue.

12. Although improperly titled, the Appellant essentially filed a motion for correction or reduction of sentence under Rule 35 of the *West Virginia Rules of Criminal Procedure*.

13. Because the circuit court's rulings on the other substantive issues presented above were final in nature following Appellant's conviction, this Court maintains jurisdiction to consider those

### D. Motion for Reconsideration of Sentence

Lastly, Appellant alleges that the circuit court has yet to rule on his Motion for Reconsideration of Sentence filed pursuant to Rule 35 of the *West Virginia Rules of Criminal Procedure*, wherein he argued that the sentences as imposed were excessive punishment since they were ordered to run consecutively by the court despite the facts including that the crimes were born from the same incident, and that the police failed to preserve the evidence in this matter.[12] Appellant alleges that the circuit court's four month delay in ruling on the motion violates his due process rights and is further grounds for reversal of his conviction.

To the extent that this motion regarding the limited issue of sentencing has not yet been ruled upon below, this interlocutory issue is not properly before this Court on appeal. That said, we strongly encourage the circuit court to address this issue and make a prompt ruling on the Appellant's motion. If the circuit court continues to delay in ruling on Appellant's motion following the instant appeal, Appellant obviously maintains the right to file an appropriate writ of mandamus at that juncture. Likewise, Appellant obviously maintains the right to appeal the merits of his motion for reduction of sentence following the circuit court's ruling, if he deems necessary.[13]

### IV.

### CONCLUSION

Accordingly, for the foregoing reasons, the Appellant's conviction is affirmed.

**Affirmed.**

Justice KETCHUM dissents and reserves the right to file a dissenting opinion.

other issues on appeal at this time. *See* W. Va.Code § 58-5-1 (1998) (the defendant in a criminal action may appeal to the supreme court of appeals from a final judgment of any circuit court in which there has been a conviction or which affirms a conviction obtained in an inferior court.)

KETCHUM, J., dissenting:

I respectfully dissent. The hearsay testimony of Officer Tiong plainly went to the very heart of the State's case against the defendant, and was an error of constitutional dimension that deprived the defendant of a fair trial.

## Testimonial Legerdemain

The primary factual dispute in the defendant's trial was whether or not the defendant was driving the vehicle at the time of the crash. The defendant contended that he was not the driver. To buttress its case that the defendant was the driver, and that the defendant was therefore guilty of DUI causing death, the prosecutor asked Officer Tiong, one of the investigating police officers, *why the defendant had been arrested for driving the vehicle*. The officer testified that he had "received information from the nurse from marks she observed [on the defendant]." The prosecutor then asked the police officer "What kind of marks?" to which the officer testified that "[the nurse] observed that there was what appeared to be seat belt marks going up the left area down to the lower right area which showed the possibility of wearing a seat belt in the driver's side."

The defendant strenuously objected to the officer's testimony as hearsay. In response to the objection, the prosecutor told the judge that the officer's testimony regarding the nurse's statements to him were not hearsay because the nurse who made the statements would personally testify at trial.[1] The prosecutor's assurance that the nurse would testify later in the trial was obviously offered to give the trial court the impression that any risks inherent in the officer's hearsay testimony would be ameliorated by the fact that the declarant of the hearsay statement was to appear at trial and be subject to cross-examination. *See State v. Jessica Jane M.*, 226 W.Va. 242, 249, 700 S.E.2d 302, 309 (2010) (the declarant's later appearance at trial ameliorates any hearsay or confrontation objection).

The prosecutor's assurances to the trial court were, however, little more than testimonial legerdemain, *i.e.*, notwithstanding the prosecutor's assurances to the trial court that the nurse would testify, the nurse never appeared or testified at trial. Consequently, the defendant could not ask the nurse if she made the statement to the police officer, much less cross examine the nurse on the accuracy of her observations.

The State now argues, in its brief on appeal, that the nurse was under subpoena to testify at the trial, but defied that subpoena by not appearing. However, there is no evidence of this in the record and no evidence that the prosecutor made any real effort to secure this witness's testimony. There is no evidence showing the prosecutor checked with the witness as to her trial appearance, or checked the morning that the trial began as to her attendance. If the prosecutor assures a trial judge that a witness will testify, then the prosecutor has a duty to present the witness. The admission of the nurse's hearsay statement is not an instance concerning the introduction of a relatively harmless matter, but instead went to the very core of a key issue in dispute.

Why would a jury only deciding guilt or innocence need to know why the police arrested the defendant? Why the police officer arrested the defendant was not relevant to any issue in the case. The jury's sole duty was to decide whether the defendant was the driver of a vehicle at a time when he was legally impaired and, if so, whether the defendant's drunk driving caused the death of another person. In other words, the reasons why the police officer arrested the defendant had no bearing on defendant's guilt or innocence.

The only valid reason for asking a police officer why he arrested a person *is to establish probable cause for the arrest*. Probable cause is decided by the court out of the presence of the jury, or by a Grand Jury. The petit jury only decides guilt or innocence, not whether the police officer had

---

1. On appeal, the State also argues for the first time that the officer's testimony repeating the nurse's out-of court statement was not hearsay because it had not been offered to prove the truth of the matter asserted. The State now contends the incriminating statement was only offered to show the officer's reason for arresting the defendant.

probable cause to arrest the defendant in the first instance.

One of our leading cases addressing hearsay issues that arise when police officers testify as to the background of their investigations is *State v. Maynard*, 183 W.Va. 1, 393 S.E.2d 221 (1990). In *Maynard*, Justice Workman, writing for an unanimous Court, correctly noted that evidence as to why a defendant became a suspect is not admissible because it is not relevant to a fact of consequence in a criminal trial. *Id.*, 183 W.Va. at 5, 393 S.E.2d at 225.

Justice Workman recognized in *Maynard* that an appellate court can find this type of hearsay, even if improperly admitted, to be harmless error. As a general proposition, I agree with that conclusion. However, I strongly disagree with that conclusion where—as in the case before us—the hearsay goes to the very heart of a much contested issue in the trial. In such instance it cannot be harmless. The mere fact that a co-defendant—who may have been the drunk driver, and who received a very favorable plea deal to testify against this defendant—testified that the defendant was the driver does not make it any less harmless, because that co-defendant's testimony is suspect as a result of the plea deal and a desire to not be held accountable as the driver of the vehicle. Similarly, the fact that a lab technician drawing blood also testified that he saw bruising on the defendant does not make it any less harmful that the out-of-court statements of a nurse—*a medical professional*—were introduced saying that the defendant's bruising was left to right, and indicated a driver's side seat belt.

While the majority opinion finds this testimony harmless, I would not. Why the police officer arrested the defendant was not an issue for the jury, it was not relevant to any issue being presented to the jury, and it was highly prejudicial to the defendant's case.

### The Hearsay Rule Needs Modification

I believe that this Court needs to revisit our hearsay rule. We frequently see cases coming before this Court where a prosecutor has thwarted a defendant's right to confront a witness or to receive a fair trial by introducing hearsay statements. Even when an objection is made, the prosecutor falls back on the time-proven exception and tells the trial judge, "Oh, we are not offering this statement to prove the truth of the matter asserted." This is more or less a wink-and-a-nod type argument, and it needs to be stopped. It appears that other jurisdictions are putting a stop to this type of testimony. An excellent article discussing police officers testifying as to why they arrested a defendant is *Arresting Officers and Treating Physicians: When May a Witness Testify to What Others Told Him for the Purpose of Explaining his Conduct?*, 18 Regent Univ. L.Rev. 229 (2006).[2] The article points out that leading authorities on evidence note that allowing a police officer to testify as to incriminating hearsay statements of other persons leading to his decision to arrest the defendant is usually an abuse of discretion. The need for this evidence is slight, and the likelihood of misuse great. *See also, John W. Strong, et al, McCormick on Evidence*, Section 249 (5th ed.1999).

We should restrict the hearsay testimony of a police officer regarding "why he arrested the defendant" by limiting the officer's testimony to a more simple statement such as "on information received, I arrested the defendant" without allowing the officer to repeat the content of any incriminating hearsay statements that may have formed a basis for the officer's decision to make an arrest. *See, Statements of Bystanders to Police Officers Containing An Accusation of Criminal Conduct Offered to Explain Subsequent Police Conduct*, 55 U. Miami L.Rev. 771 (2001). Other courts limiting an officer's testimony have recognized that the out-of-court statement inferring the defendant's guilt is "classic hearsay," *Id.*, at 10, 393 S.E.2d 221, "[w]hen the only possible relevance of an out-of-court statement is directed to the truth of the matters stated by a declarant, the subject matter is classic hearsay even though the

2. For a more detailed review of how some other jurisdictions are addressing the issues, see footnotes 6 and 7 of the article, where the article's author cites many appellant courts which hold

that it is error for a police officer, in explaining why a defendant was arrested, to testify about the details of incriminating hearsay statements.

proponent of such evidence seeks to clothe such hearsay under a nonhearsay label." *Keen v. State*, 775 So.2d 263, 273 (2000). *See also, United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir.2004) (notwithstanding arguments of prosecutor, police officer's hearsay statements could not have been relevant to any issue other than their truth); *People v. Warlick*, 302 Ill.App.3d 595, 236 Ill.Dec. 369, 707 N.E.2d 214 (Ill.Ct.App.1998).

The time has come for prosecutors to present live witnesses rather than non-rebuttable incriminating hearsay testimony. Some prosecutors may take pride in their "slight of hand" tactics; however, it not only violates a defendant's constitutional rights to confront his or her accusers and to receive a fair trial, but it will lead to innocent people being found guilty of crimes they did not commit. My philosophy on criminal trials is straight-forward. Try a defendant with witnesses who have first-hand knowledge, not with irre-buttable hearsay testimony. It will force prosecutors to work harder in determining the real facts rather than relying on the police to convict with hearsay. Prosecutors should prepare for trial and present witnesses with first hand knowledge. Evidence presented to a jury by prestidigitation only serves to undermine the fairness of our jury system.

For these reasons, I respectfully dissent.