# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0897** (Jefferson County 18-M-AP-5)

**Douglas F. Kobayashi,**
**Defendant Below, Petitioner**

**FILED**

**February 7, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Self-represented petitioner Douglas F. Kobayashi appeals the Circuit Court of Jefferson County's September 24, 2018, order sentencing him to thirty days in the regional jail, said sentence suspended in lieu of specific continuing legal education requirements, following his conviction of one count of witness intimidation. Respondent State of West Virginia, by counsel Mary Beth Niday, filed a response. On appeal, petitioner argues that the circuit court erred in finding that certain evidence was not exculpatory and that the State failed to establish the necessary criminal intent to support his conviction.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2016, petitioner—at the time, an attorney[1]—was appointed to represent Shawn Weister in a criminal proceeding in which Mr. Weister was charged with robbery. The record is undisputed that petitioner called the alleged victim in Mr. Weister's criminal case, Tammy McDaniel, at her place of employment in August of 2016. Additionally, petitioner recorded his conversation with the victim, during which he failed to identify himself as Mr. Weister's attorney. During this initial telephone conversation, the victim was "clear that she believe[d] Shawn Weister was one of the individuals [who] robbed her in July 2016." During the

---

[1]By order entered on March 17, 2019, this Court entered an order annulling petitioner's law license.

1

conversation, the victim agreed to meet with petitioner later that same day. After arriving at the victim's place of employment, petitioner again failed to identify himself as representing Mr. Weister. According to the circuit court, petitioner informed the victim that Mr. Weister "would be less likely to come after her if she did not testify against him" and also told her that "'snitches get stitches' in an attempt to intimidate" her. Additionally, petitioner presented the victim "with a document that look[ed] like it originated from the Jefferson County Prosecutor's Office." Despite never having indicated to petitioner that she wished to have the charges against Mr. Weister dismissed, the document petitioner presented to the victim was written to that effect, and petitioner pressured the victim to list her reason for dismissal as "misidentification," because he asserted that "the courts would not be able to help her" if she indicated that she sought dismissal out of fear for the safety of herself and her family. It was only after the victim signed this document that petitioner identified himself as Mr. Weister's attorney. That same day, petitioner sought a bond reduction for Mr. Weister by relying upon the victim's supposed misidentification of Mr. Weister. He then filed several other pleadings on Mr. Weister's behalf that relied upon the document in question.

Following this conduct, petitioner was charged with one count of witness intimidation in magistrate court in September of 2016. Eventually, the magistrate court held a bench trial in July of 2018, after which the court found petitioner guilty of the lone count. The court sentenced petitioner to thirty days in the regional jail but suspended the sentence in lieu of eight hours of continuing legal education concerning how to properly interact with witnesses and victims or legal ethics. Petitioner appealed that conviction, and the circuit court held a bench trial in September of 2018, during which the State presented testimony from the victim and Sgt. Anthony Mancine of the Charles Town Police Department, who investigated the matter. During Sgt. Mancine's testimony, he indicated that he requested surveillance footage of petitioner's meeting with the victim from her employer at least three times. However, the employer never provided the video and eventually recorded over it. According to Sgt. Mancine, although the footage contained audio, he could not make out what was said between petitioner and the victim. The victim testified consistently with the facts related above. At the close of the State's case-in-chief and again after all the evidence was presented, petitioner moved for dismissal and/or judgment of acquittal. The circuit court denied both motions and, ultimately, found petitioner guilty. The circuit court again sentenced petitioner to thirty days in the regional jail, although it suspended the sentence in favor of petitioner submitting to eight hours of continuing legal education that specifically addressed how to appropriately interact with witnesses and victims or other ethical concerns. It is from the circuit court's sentencing order that petitioner appeals.

This Court has previously held as follows:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl., *State v. Maisey*, 215 W. Va. 582, 600 S.E.2d 294 (2004). Additionally, "[a] trial court's

evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998).

On appeal, petitioner first alleges that the circuit court erred in finding that the destroyed surveillance video from the victim's place of employment that depicted the crime contained no exculpatory evidence. Petitioner contends that the State violated his rights by failing to provide the video to him. We have previously provided the following instruction on issues of the preservation and disclosure of evidence:

> When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either West Virginia Rule of Criminal Procedure 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

Syl. Pt. 2, *State v. Osakalumi*, 194 W. Va. 758, 461 S.E.2d 504 (1995). Additionally, this Court has routinely held that

> [t]here are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007). With these standards in mind, we find that petitioner's argument is without merit.

It is undisputed that the State never possessed the evidence in question, despite Sgt. Mancine's repeated requests for the victim's employer to provide the same. In support of his argument, petitioner relies on several cases concerning the preservation and disclosure of evidence. *See, e.g., Brady v. Maryland*, 373 U.S. 83 (1963) (requiring the State to preserve and produce exculpatory evidence in criminal proceedings). The cases upon which petitioner relies, however, concern the State's preservation of evidence *in its possession* or a failure to otherwise disclose such evidence, and petitioner fails to cite to any authority that would impose a duty on the State under the facts of this case to take affirmative steps—beyond Sgt. Mancine's repeated

3

requests—to obtain the video in question. Indeed, this Court has addressed a similar situation and found no reversible error.

In *State v. Morris*, 227 W. Va. 76, 705 S.E.2d 583 (2010), the defendant alleged that the State had a duty to preserve a vehicle involved in a fatal accident "because it contained potentially exculpatory evidence." *Id*. at 83, 705 S.E.2d at 590. However, because the circuit court found that the State never took possession of the vehicle, there was no duty to preserve it. *Id*. Specifically, the circuit court ruled as follows:

> I must say that in this case I don't believe the State took possession of that vehicle. There was a crash scene with injuries but not a death at that time. Police routinely, routinely investigate accidents and if they were to take all the cars into some sort of custody then they would have a large inventory of smashed up vehicles indeed.
>
> . . . .
>
> So I don't see this really being—I don't think even comes close to bad faith or even frankly I'm not even sure that it's negligent. It's so close to the conduct of normal police investigation.

*Id*. at 83-84, 705 S.E.2d at 590-91. This Court agreed, finding that the circuit court did not abuse its discretion because

> even if the vehicle was in the State's possession and the Appellant was able to establish that the State had a duty to preserve and produce the vehicle, the Appellant ha[d] still not established the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remain[ed] available.

*Id*. at 84, 705 S.E.2d at 591. The Court found no merit to the argument that failure to obtain and preserve the vehicle constituted a *Brady* violation because "the vehicle in question was not in the possession of the State, and based on the specific set of circumstances in this case, the State did not have a duty to preserve it." *Id*. Ultimately, the Court ruled that "[b]ecause the Appellant ha[d] not . . . sufficiently demonstrated the potential exculpatory value of the [evidence], . . . the Appellant ha[d] not demonstrated that the State failed to disclose evidence materially favorable to the accused under *Brady*." *Id.* These facts are particularly instructive in regard to petitioner's claims on appeal in the current matter.

In ruling on petitioner's motion to dismiss based on the State's failure to preserve the evidence in question, the circuit court in this matter specifically indicated that,

> [i]n order for the [c]ourt to even entertain the issue of dismiss[al] . . . , the [c]ourt would have to find that the video would be exculpatory and the [c]ourt has not been convinced that that's the case. The video, according to the testimony of Sergeant Mancine, had some volume but you couldn't make out what was being

4

said.

[Petitioner], you seem to suggest that because the conversation was cordial and friendly and there was no overt intimidation somehow should lead this [c]ourt to think that intimidation couldn't have taken place, I think is misplaced.

. . . .

So I don't think that the videotape has been demonstrated to be exculpatory in the first place, I don't think it would have been helpful one way or the other because I think there could be intimidation despite what was on the video.

. . . .

Even going beyond whether or not it was exculpatory . . . , the [c]ourt wouldn't be able to entertain the motion to dismiss under those grounds unless some State action was the cause of the evidence not being preserved.

And while no subpoena was issued, Sergeant Mancine testified . . . that he made several requests and had expected this to be delivered, wasn't delivered, and by the time anybody figured that out [the victim's employer] had destroyed the tape . . . .

So I don't think there was any State action that caused the evidence to not be preserved. And even if there was some State action, I don't think it was exculpatory in nature based on what I heard.

As the circuit court noted, Sgt. Mancine testified that he viewed the surveillance video depicting the crime during his investigation. And although he testified that the video "did have audio," he further clarified that he could not hear the conversation between petitioner and the victim. Sgt. Mancine further testified that he "made several attempts to get the video," but that "every time [he] was supposed to get a copy of it, it never showed up, nobody ever came with it." Based upon this evidence, it is clear that the State did not engage in any bad faith related to the third-party's destruction of the video and that the video was not exculpatory, given that the specifics of the conversation in which petitioner intimidated the victim into recanting her identification of his client were unintelligible.

On appeal, petitioner asserts that "it is possible the State could have had the sound amplified." However, there is no evidence to support this assertion in the record.[2] Additionally,

---

[2]During Sgt. Mancine's testimony, the following exchange with petitioner occurred:

Q.    And you had testified earlier in the magistrate court case that the video had audio on it, correct?

(continued . . . )

5

petitioner argues that the video, absent intelligible audio, still contained exculpatory or impeachment evidence because it depicted the parties' body language, the amount of time the victim considered the document before signing it, and other physical attributes that he believes suggest no intimidation took place. We disagree, and reiterate that "[a] *Brady* claim [cannot] be premised upon speculation." *State v. Shanton*, No. 16-0266, 2017 WL 2555734, at *4 (W. Va. June 13, 2017)(memorandum decision) (citations omitted). Here, petitioner's only arguments that the video constituted exculpatory or impeachment evidence are predicated entirely upon speculation.[3] Because the video in question did not constitute either exculpatory or impeachment evidence, no violation could have occurred and the drastic remedy of dismissal of the charge against petitioner would have been inappropriate. Accordingly, we find no abuse of discretion in

---

A.    It did have audio.

Q.    And so you could hear conversations?

A.    Not really, no.

Q.    Would it have been or could it have been possible for you to get that video and then send it to have it amplified?

A.    I don't know. I don't know—

Q.    So it's possible? I'm sorry.

A.    Yeah, I don't know if the State is capable of doing that or not. I'm not a technical wizard.

As is clear from this testimony, Sgt. Mancine indicated that he did not know if such amplification was possible. Accordingly, any assertion on appeal that the State could have achieved such amplification has no basis in the record.

[3]Petitioner also bolsters his argument by asserting that the video was of the utmost importance because "there is no probative value or reliability of secondary or substitute evidence here in the form of [the victim's] self-serving testimony when she consistently contradicted herself about her interactions with the [p]etitioner at trial." We note, however, that the circuit was presented with these inconsistencies, yet still explicitly found that the victim's testimony regarding her interactions with petitioner was credible. "An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact." *State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995). Accordingly, any assertion on appeal that the victim lacked credibility is without merit and will not support petitioner's argument that, absent the video, dismissal was warranted.

the circuit court's refusal to grant petitioner's motion to dismiss on this basis.[4]

Finally, petitioner argues that "the circuit court did not find that the [p]etitioner had the requisite criminal intent to intimidate the witness and therefore the conviction must be reversed." However, we note that the record does not support this assertion. On appeal, petitioner relies on one quote from the court, taken out of context, to assert that the circuit court found he lacked the requisite intent to commit the crime in question. Specifically, petitioner cites to a portion of the trial transcript where the circuit court stated as follows: "And looking at the totality of all of the evidence, the [c]ourt comes to the conclusion that you did step over the line no matter how well intended you were. And I don't doubt that you were well intended." Based entirely on this statement, petitioner argues that his conviction should be reversed. However, petitioner ignores the fact that on the same page of the trial transcript, the circuit court explicitly stated that "the State has demonstrated beyond a reasonable doubt that the [petitioner] had violated Section 61-5-27(b)(2)[5] of the West Virginia Code and therefore finds him guilty of that charge." (Footnote added). Further, although petitioner repeatedly asserts that the circuit court found that he "did not have the requisite intent to intimidate or impede [the victim] from testifying," we note that the circuit court's final order contains a finding that petitioner possessed the necessary intent. Specifically, the circuit court found that petitioner "told [the victim] that 'snitches get stitches' in an attempt to intimidate" her while presenting her with a document to support dismissal of the case against his client. "It is a paramount principle of jurisprudence that a court speaks only through its orders." *Legg v. Felinton*, 219 W. Va. 478, 483, 637 S.E.2d 576, 581 (2006) (citation omitted). Given this principle, the circuit court's passing reference at trial to its belief about

---

[4]In his brief on appeal, petitioner mentions in passing and without reference to any supporting authority that "[e]ven if the video[ was] not exculpatory . . . , the State would still be required to disclose the video[] pursuant to" Rule 29(b) of the West Virginia Rules of Criminal Procedure for Magistrate Courts and Rule 16(a)(1) of the West Virginia Rules of Criminal Procedure. Petitioner fails to address, however, how these rules would be applicable, beyond the requisite consideration under *Osakalumi*. Rule 29(b) of the Rules of Criminal Procedure for Magistrate Courts requires the State to disclose any evidence it "intends to use . . . during any stage of the court proceedings," which is clearly inapplicable given that the State did not intend to use the video. Further, Rule 16(a)(1) of the Rules of Criminal Procedure requires disclosure of various types of evidence that is "within the possession, custody or control of the [S]tate." Again, this rule is clearly inapplicable because the videotape in question was not in the State's possession. Accordingly, these rules do not entitle petitioner to relief on appeal.

[5]According to West Virginia Code § 61-5-27(b)(2),

[i]t is unlawful for a person to use intimidation, physical force, harassment, or a fraudulent legal process or official proceeding, or to threaten to do so where such threat is directed at inciting or producing imminent lawless action of a violent nature that could cause bodily harm and is likely to incite or produce such action or to attempt to do so, with the intent to: (2) Impede or obstruct a juror or witness from performing his or her official duties in an official proceeding[.]

7

petitioner's motivations for committing the crime in question do not constitute a finding that the State failed to prove any essential element of the crime charged, especially in light of the fact that the circuit court specifically found that petitioner intended to intimidate the victim.

Petitioner further recounts certain portions of the evidence at trial to assert that the record supports a finding that he did not intend to intimidate the witness. We have previously held as follows:

> "A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled." Syl. Pt. 3, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Syl. Pt. 2, *State v. Seen*, 235 W. Va. 174, 772 S.E.2d 359 (2015). Without specifically identifying the evidence petitioner summarizes to argue that he was not guilty, we note that he not only excludes the strongest evidence against him, but he asks this Court to agree with the inferences he draws from the evidence he does highlight. For example, petitioner argues that the victim testified that "she believed the [p]etitioner's conduct towards her was supportive and respectful" and that "[p]etitioner tried to reassure her that he did not know of any threats against her." Based on the specific evidence to which he cites, petitioner infers that the victim's "description of the [p]etitioner's conduct is therefore evidence of the [p]etitioner's intent that he was not trying to impede or obstruct the witness from testifying."[6] Such arguments do not entitle petitioner to relief, as our prior holdings require that the evidence, and all inferences therefrom, must be viewed in the light most favorable to the prosecution.

Further, petitioner argues that to uphold his conviction would criminalize conduct in which someone "simply repeat[ed] the concerns expressed by the witness back to the witness as

---

[6]In contradiction to his earlier attacks on the victim's credibility in support of his first assignment of error, petitioner asserts in support of his second assignment of error that the circuit court found the victim to be credible and that such determination cannot be reversed on appeal. After citing to portions of her testimony that he believes are favorable to his position, petitioner then contends that the circuit court's conclusion that he lacked the requisite intent was based on the victim's credible testimony and, thus, entitled to deference on appeal. Again, the circuit court made no such finding, and the victim's testimony not only does not support such finding but, in fact, establishes that petitioner intimidated her into taking the actions outlined above.

8

a form of active listening to demonstrate to the witness that the listener understood the witness's concerns." This is simply not the conduct that formed the basis of petitioner's conviction. On the contrary, the record shows that petitioner misled the victim as to his relationship to Mr. Weister and did not reveal his identity as Mr. Weister's attorney until after the victim executed a document expressing her wishes that the charges against him be dismissed—a document she never requested petitioner to draft and that was not in keeping with her clear belief that petitioner's client robbed her. In furtherance of this end, petitioner intimidated the victim by stating that "snitches get stitches." In short, it is clear that the evidence below supported petitioner's conviction and that the State proved petitioner possessed the necessary intent to intimidate the victim. Accordingly, he is entitled to no relief.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 7, 2020

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

9