IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

No. 11-1648

**FILED**

**April 22, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel.
PAMELA JEAN GAMES-NEELY,
Petitioner

v.

THE HONORABLE JOANN OVERINGTON,
Magistrate, Berkeley County, West Virginia
Respondent

Appeal from the Circuit Court of Berkeley County
The Honorable Gina M. Groh, Judge
Civil Action No. 11-C-403

AFFIRMED

Submitted:  March 5, 2013
Filed:  April 22, 2013

Christopher Quasebarth, Esq.
Chief Deputy Prosecuting Attorney
Berkeley County Prosecutor's Office
Martinsburg, West Virginia
Attorney for the Petitioner

Harley O. Wagner, Esq.
The Wagner Law Firm
Martinsburg, West Virginia

Jason M. Glass, Esq.
Glass Defense Firm
Clarksburg, West Virginia
Attorneys for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1.      "The standard of appellate review of a circuit court's refusal to grant relief through an extraordinary writ of prohibition is *de novo*."  Syl. Pt. 1, *State ex rel. Callahan v. Santucci*, 210 W. Va. 483, 557 S.E.2d 890 (2001).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.  These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue.  Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.	"The State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented." Syl. Pt. 5, *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992).

4.	"'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1' Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syl. Pt. 2, *State ex rel. Kees v. Sanders*, 192 W. Va. 602, 453 S.E.2d 436 (1994).

5.	"Before the result of a Breathalyzer test for blood alcohol administered pursuant to Code, 17C-5A-1 et seq., as amended, is admissible into evidence in a trial for the offense of operating a motor vehicle while under the influence of intoxicating liquor, a proper foundation must be laid for the admission of such evidence." Syllabus, *State v. Hood*, 155 W. Va. 337, 184 S.E.2d 334 (1971).

6.	"In the trial of a person charged with driving a motor vehicle on the public streets or highways of the state while under the influence of intoxicating liquor, a chemical analysis of the accused person's blood, breath or urine, in order to be admissible in evidence in compliance with provisions of W. Va. Code, 17C-5A-5, 'must be performed in accordance with methods and standards approved by the state department of health.' When the results of a breathalyzer test, not shown by the record to have been so performed or administered, are received in the trial evidence on which the accused is convicted, the admission of such evidence is prejudicial error and the conviction will be reversed." Syl. Pt. 4, *State v. Dyer*, 160 W. Va. 166, 233 S.E.2d 309 (1977).

7.	"There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007).

Per Curiam:

This case is before the Court upon the appeal of the prosecuting attorney of Berkeley County, West Virginia ("the State"), from the October 5, 2011, order of the circuit court of Berkeley County, West Virginia, denying the State's petition for writ of prohibition. Before the circuit court, the State sought to prohibit the enforcement of the Respondent magistrate's order directing the State to produce certain discovery to Christopher Seidell ("the Defendant") in a pending misdemeanor driving under the influence ("DUI") case. The State argues that the circuit court erred in denying the writ of prohibition 1) when the Respondent magistrate exceeded her legal authority by ordering discovery of information not authorized by West Virginia Rule of Criminal Procedure for Magistrate Courts 29 and 2) when the Respondent magistrate exceeded her legal authority in a misdemeanor DUI case by ordering specific discovery requested by the Defendant without a showing of materiality to the defense's case. Having carefully considered the parties' briefs and oral arguments, the appendix record, and all other matters submitted before the Court, we affirm the decision of the circuit court.

## I. Facts and Procedural History

On January 6, 2011, the Defendant was charged in the Magistrate Court of Berkeley County with violating the provisions of West Virginia Code § 17C-5-2(d) (Supp.

1

2012),[1] a misdemeanor DUI offense and a minor traffic offense.[2] The arresting officer administered a secondary chemical breath test using the Intoximeter EC/IR II breath machine ("Intoximeter") on the Defendant that showed a blood alcohol level of 0.149%.

On March 18, 2011, the Defendant filed a motion in the Magistrate Court of Berkeley County for breath test discovery. Specifically, the Defendant requested that he be provided with the following information "pursuant to the United States Constitution, West Virginia Constitution, Rule 16 of the West Virginia Rules of Criminal Procedure and Rule

_____

[1]West Virginia Code § 17C-5-2(d) provides, in relevant part:

> Any person who:
> (1)     Drives a vehicle in this state while he or she:
> (A)     Is under the influence of alcohol;
>          . . . .
> (E)     Has an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight, but less than fifteen hundredths of one percent, by weight;
> (2)     Is guilty of a misdemeanor and, upon conviction thereof, except as provided in section two-b [§ 17C-2-2b] of this article, shall be confined in jail for up to six months and shall be fined not less than one hundred dollars nor more than five hundred dollars . . . .

[2]According to the circuit court's order,

> [t]he arrest was based upon the following allegations:  1) the arresting officer observed the Defendant almost hitting another vehicle at an intersection and then not signaling lane changes and weaving; 2) the Defendant exhibited signs of intoxication and admitted drinking beers; and 3) the Defendant failed each of the non-scientific field sobriety tests and blew a .114 on the preliminary breath test.

2

29 of the West Virginia Rules of Magistrate Court[:]"

1. The downloaded data for the Intoximeter EC/IR II breath machine used in this case. Specifically all of the data for all the records for all of the files downloaded for EC/IR II serial number 008084 for the time period of January 1, 2010[,] through March 1, 2011. It is requested that this data be in both digital and hard copy format with the first row showing headers. Regardless how the data is provided, it is important that all the files, including the blow data and fuel cell data be provided.

2. All the maintenance and certification records for EC/IR II serial number 008084 for the time period of January 1, 2010[,] to March 1, 2011.

3. All the maintenance and certification records for any and all simulators used in the calibration or verification of accuracy for EC/IR II serial number 008084. This particular request includes documentation for any NIST thermometers that are used in the verification of simulator calibration.

4. All assays for any and all simulator solutions used in the calibration or verification of accuracy for EC/IR II serial number 008084.

5. Identification and verification of alcohol concentration of any and all dry gas used in the calibration or verification of accuracy for EC/IR II serial number 008084.

6. Copies of any and all training materials received by the department from Intoximeters, Inc. [,] for the training of breath test operators and maintenance technicians.

Further, any personal information from individuals other than the named defendant, Christopher Seidell, may be excluded from any and all information provided. However, it is expressly understood that any "fields" omitted by the West Virginia State Police prior to providing said information be identified in some recognizable manner such as a citation number or some similar consistent form thereof.

The State did not file any written opposition to the Defendant's discovery motion. Both the State and the Defendant represented that there was a hearing before the

Respondent magistrate, but there is no record of the hearing and what arguments were made before the Respondent magistrate. On May 10, 2011, the Respondent magistrate ordered the State to produce the discovery sought by the Defendant and twice noted in the order that the State objected to its ruling.

On May 16, 2011, the State filed a petition for writ of prohibition in the circuit court seeking to prohibit the Respondent magistrate from enforcing the order requiring the State to produce the discovery sought by the Defendant. The State's primary argument in its four-page petition was that the information sought was "irrelevant to the charge and outside the scope of discovery allowed in Magistrate Court." The only record submitted with the petition was the Defendant's motion filed in magistrate court and the Respondent magistrate's order.

Thereafter, on July 6, 2011, the Defendant filed a "Motion to Deny State's Petition for Writ of Prohibition." The Defendant provided the circuit court with orders entered in other felony cases in this State in which a defendant had requested the identical information and the circuit court had ordered the State to produce that information. Interestingly, the Defendant also attached an agreed order in which the same prosecuting attorney in this case had agreed to produce the precise discovery being challenged in the instant matter. Additionally, the Defendant attached a copy of an affidavit from Mary

4

Catherine McMurray, an expert witness that the Defendant intended to use in this case. Ms. McMurray's affidavit was actually prepared for another DUI case. The affidavit provided information involving the Intoximeter, but it was not the identical Intoximeter used on the Defendant as the serial number on the machine was different from the machine in issue. The Defendant's attorney represented to the circuit court that the expert would provide the identical opinions and information regarding the relevancy and materiality of the discovery sought in the instant case.[3]

The circuit court held a hearing on the State's writ of prohibition. The focus of the hearing was the downloaded data from the Intoximeter that was requested by the Defendant. Despite the lack of any transcript from the hearing before the Respondent magistrate, the assistant prosecuting attorney contended that the Defendant's attorney "had not articulated the reason why these items he's requesting are relevant to his preparation of the defense to the case . . . ."

The Defendant's attorney responded that "the machine is designed to produce

_____

[3]The affidavit that was submitted before the circuit court was not attached to the discovery motion that was submitted to the Respondent magistrate. The submission of an affidavit with the motion requesting the instant discovery in magistrate court might have prevented the State's opposition of the discovery motion on the grounds of materiality or relevancy; however, because the State filed no written opposition to the Defendant's motion in magistrate court, there is no record that the Defendant was apprised of the State's objections to the discovery prior to the hearing before the Respondent magistrate.

this data. They're objecting to the very nature of the machine . . . ." The Defendant's

attorney further argued that

> it's [referring to the downloaded data] a procedural history of the machine where you get to take a meaningful look at the calibration and how they're doing it. How they're doing their accuracy inspections, when they've exchanged their dry gas tanks. Every aspect that goes into it so when they hand you that printer ticket and say "trust us" you get a scrutinized and meaningful review of the most critical piece of evidence in a DUI case which is the breath box and the days of just handing them the ticket and say "trust us, that's reliable" are over. It's over everywhere. It's over in every state. So to say that it's not relevant it's just missing the mark completely.

In further support of the argument that the discovery sought in the instant case

was being provided in other states that use the Intoximeter, the Defendant's attorney argued

that

> [a]s far as relevancy, and the only reason I included the North Carolina stuff and the Wyoming stuff who have the same exact breath box as West Virginia, there's nine states[4] that use it and [in] all the other states this data this discovery is being produced I simply showed it as a means to say this isn't something I just woke up, fell out of bed, and said let's come up with this idea. This stuff that's being ordered in other states on the same exact breath box, on the same exact machine, and that's the relevance of showing you in those orders similar judges hearing these same exact arguments all

---

[4]The Defendant also represented before this Court during oral argument that nine states, including West Virginia, currently use the Intoximeter ER/IR breath machine and in all the other states the discovery currently sought by the Defendant is being produced. *See State v. Espinoza*, No. CT-2011-858 (Wy. Cir. Ct. 2nd Jud. Dist. June 14, 2011) (unreported court order); *State v. Marino*, No. 09 CRS 51150 (N.C. Gen. Ct. J. Sup. Ct. Div. Nov. 18, 2010) (unreported court order).

ordering it.

(Footnote added).

Further, contrary to the State's argument that the Defendant did not offer any proof of relevancy before the Respondent magistrate, the Defendant's attorney represented to the circuit court that

> I did the same exact argument [regarding relevancy] with Magistrate Overington [the Respondent magistrate] and it was not some fly-by-night argument. Richard Stephens [the assistant prosecutor in the magistrate court proceeding] and I sat down there for an hour and went back and forth, back and forth, back and forth. Magistrate Overington asked a lot of the same questions [regarding the discovery sought]. . . . Not one of them has denied this because it's relevant. Period. Period.

During the circuit court hearing the Defendant's attorney relied upon Ms. McMurray's affidavit. Ms. McMurray is "a chemist and forensic consultant on issues relating to the measuring of alcohol in the breath." She went into great detail in her affidavit regarding the relevancy of the data stored on the Intoximeter.[5]

_____

[5]The State objected to the affidavit on the grounds of hearsay. The State also argues on appeal that Ms. McMurray's affidavit "references software and calibration changes" which were not for the device that was used on the Defendant. The proceeding before the circuit court was a writ of prohibition that turns upon legal and not evidentiary issues. Consequently, there is no need to address the State's evidentiary objections. *See* Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996); Syl. Pt. 2, *State ex rel. Kees v. Sanders*, 192 W. Va. 602, 453 S.E.2d 436 (1994).

7

Regarding the request for downloaded data from January 1, 2010, to March 1, 2011, the circuit court asked the State the following: "Would you have a different position, Mr. Quasebarth, if he [referring to the Defendant] shortened it [referring to the downloaded data sought] up to six or three months [rather than the requested period of over a year from January 1, 2010, to March 1, 2011]?" The assistant prosecuting attorney responded:

> Well, it's interesting, your Honor, that you bring that up because in the Wyoming order that Mr. Wagner [defense counsel] has attached where the defendant was looking for a wider window the Wyoming court decided that ninety days was sufficiently relevant.
>     THE COURT:        Would we be here with this petition from the State if the window was smaller?
>     MR. QUASEBARTH:        As far as that data that he's requesting probably not *if it was tighter I could see there would [be] a strong[] argument for relevancy in a tighter window*.

(Emphasis added).

Additionally, the assistant prosecuting attorney did not dispute the ease with which the information sought could be downloaded from the Intoximeter. Specifically, the assistant prosecutor stated:

> I'm not disputing–my understanding about whether it's easy to access the information, that's not the dispute. The question has to be relevancy to this proceeding and so your Honor's question was *whether there was a narrower time frame and I would have to concede a narrower time frame I could understand a stronger argument of relevancy rather than the broader window that has been requested. That same logic applies to request number two which is for maintenance certifications records where he's got, you know, a broad window a year before and sixty days afterwards.*
>         He doesn't have windows for his other–or next couple of requests where he's talking about simulators, but I haven't heard

8

from Mr. Wagner why that information is relevant to this proceeding. Why the request for assay simulator solutions used in the calibration are relevant to this proceeding, or the identification verification of alcohol concentration of any and all dry gas used in the calibration for verification of accuracy for the machine.

Again, *maybe there's some relevancy* with that last one for the dry gas that was used for the test but it seems that he's asking for everything that was ever used with this machine over the course of a 14-month period and he hasn't identified the relevancy of that. If your Honor were to deny the writ and this discovery order were to go forward, you know, there might be a later point where in magistrate court we have some argument about, you know, what can be provided or not be provided, that's not going to be germane today. So I don't think there's anything to get into about that, but again we've got a very broad request and a not clear articulation of why that broad request is relevant . . . .

(Emphasis added).

In response to the State requesting a narrower window, the Defendant argued that the computer portion of the Intoximeter is fully capable of storing information for each test and/or sampling. As the circuit court found in its order, the Defendant argued that

to fairly evaluate an evidential breath alcohol machine's performance it is necessary to have data from a year prior to the date of a defendant's testing and a year subsequent, if possible. This wide time frame allows for a thorough review of how the instrument was functioning at a point in time pre or post the Defendant's test in order to assess whether or not anything has changed with the instrument's functionality. According to the Defendant, issues such as calibration stability and/or drift can only be evaluated if there is sufficient verification data, which is why the Defendant requires a wider window of operational data.

By order entered October 5, 2011, the circuit court denied the requested

9

petitioner for writ of prohibition.  The circuit court determined that it was not clear that the discovery sought was outside the scope of Rule 29 of the West Virginia Rules of Criminal Procedure for Magistrate Courts.  The circuit court further concluded that the evidence sought by the Defendant was both relevant and material as follows:

> More fundamentally, though, the Court agrees with the Defendant that Rule 29, W. Va. R. Crim. P. Mag. Ct. notwithstanding, the Defendant has a constitutional due process right, pursuant to both the Fifth Amendment to the United States Constitution and Article III, § 10 of the West Virginia Constitution, to discover and to examine relevant evidence which is material to his defense.

The circuit court then specifically analyzed the Defendant's six discovery requests and found that the discovery sought in each request was relevant and not unduly burdensome for the State to produce.[6]  It is from this order that the State appeals.

---

[6]Regarding the Defendant's discovery request for "[c]opies of any and all training materials received by the department from Intoximeters, Inc.[,] for the training of breath test operators and maintenance technicians[,]" the State argued that although such training manuals were relevant and material, the manuals were protected by copyright and could not be reproduced.  The circuit court rejected the State's copyright argument; however, the court protected the copyrighted material as follows:

> any reproductions of copyrighted manuals in the instant case shall be solely for purposes of the Defendant's case, and shall not in any way be used for any commercial or economic purpose.  For purposes of this case, no person(s) reviewing the manuals shall copy them or distribute them to anyone or permit anyone not directly involved in this case to review them. Furthermore, after this case has been resolved, no one shall maintain copies of the manuals and other records produced.

(continued...)

10

II. Standard of Review

"The standard of appellate review of a circuit court's refusal to grant relief through an extraordinary writ of prohibition is *de novo*." Syl. Pt. 1, *State ex rel. Callahan v. Santucci*, 210 W. Va. 483, 557 S.E.2d 890 (2001). Additionally, we have held that

> [i]n determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

Moreover, in syllabus point five of *State v. Lewis*, 188 W. Va. 85, 422 S.E.2d 807 (1992), this Court held that

> [t]he State may seek a writ of prohibition in this Court in a criminal case where the trial court has exceeded or acted outside

⁶(...continued)
We find no error in the circuit court's handling of the copyrighted manuals.

11

of its jurisdiction. Where the State claims that the trial court abused its legitimate powers, the State must demonstrate that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction. In any event, the prohibition proceeding must offend neither the Double Jeopardy Clause nor the defendant's right to a speedy trial. Furthermore, the application for a writ of prohibition must be promptly presented.

The State, during oral argument before this Court, maintained that this Court had backed away using the *Lewis* case in writs of prohibition brought by the State. Further, the State argued in its reply brief that

> [i]f this Court were to strictly apply this Lewis standard to the seeking of a writ of prohibition in circuit court from a ruling in magistrate court, and find that the State is not deprived of its right to prosecute, then the State is wholly without remedy to ever have such erroneous rulings of the magistrate court reviewed since the State has no right of appeal in a criminal case.

Contrary to the State's arguments, this Court has recognized that there is "a very narrow avenue by which the State may seek review" of criminal matters by writ of prohibition. *State ex rel. Clifford v. Stucky*, 212 W. Va. 599, 601, 575 S.E.2d 209, 211 (2002). Additionally, we have held that "'[a] writ of prohibition will not issue to prevent a simple abuse of discretion[7] by a trial court. It will only issue where the trial court has no

_____

[7]This Court recognized years ago that it "has tended to look with increasing favor upon the liberal use of discretion in criminal discovery while recognizing that the philosophy of full disclosure applicable to civil cases as embodied in the West Virginia Rules of Civil
(continued...)

12

jurisdiction or having such jurisdiction exceeds its legitimate powers. *W. Va. Code*, 53-1-1.'

Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977)." Syl.

Pt. 2, *State ex rel. Kees v. Sanders*, 192 W. Va. 602, 453 S.E.2d 436 (1994) (footnote

added). Finally, regardless of how frequently the Court may use the *Lewis* decision, it

remains the law of this State until we alter the holding in a new syllabus point.[8] Using all of

the aforementioned standards, we review the instant matter.


III. Argument

A. Rule 29 of the West Virginia Rules of
Criminal Procedure for Magistrate Courts

Our review of this case begins with an examination of Rule 29 of the West

Virginia Rules of Criminal Procedure for Magistrate Courts.[9] That rule provides, in relevant

---

[7](...continued)
Procedure is inappropriate in criminal cases." *State v. Dudick*, 158 W. Va. 629, 636, 213 S.E.2d 458, 463 (1975); *see State v. Helmick*, 169 S.E.2d 94, 98, 286 S.E.2d 245, 248 (1982).

[8]*See* Syl. Pt. 2, *Walker v. Doe*, 210 W. Va. 490, 558 S.E.2d 290 (2001) ("This Court will use signed opinions when new points of law are announced and those points will be articulated through syllabus points as required by our state constitution.").

[9]Rule 29 was drafted and adopted by the Court in 2007 as a result of the Court's decision in *State v. Doonan*, 220 W. Va. 8, 640 S.E.2d 71 (2006). In *Doonan*, we held that

> [u]ntil an appropriate rule is adopted in the Rules of Criminal Procedure for Magistrate Courts, the provisions of Rule 16 of the West Virginia Rules of Criminal Procedure shall govern the procedures and requirements for discovery in criminal cases which are to be heard on their merits in

(continued...)

13

part:

(a) The state and the defendant shall make every reasonable effort to informally exchange reciprocal discovery prior to trial. In the event that the parties are unable to reach an agreement on discovery, the following provisions shall apply:

(b) *Disclosure of evidence by the state.*
(1) The following must be disclosed by the state, if the state intends to use such evidence during any stage of the court proceedings:
(A) Statement of defendant
(B) Defendant's prior criminal record
(C) Documents and tangible objects
(D) Reports of examination and tests
(E) Expert witnesses: names, addresses and summary of expected testimony
(F) State witnesses: names and addresses

(c) *Disclosure of evidence by the defendant.*
(1) The following must be disclosed by the defendant, if the defendant intends to use such evidence during any stage of the court proceedings:
(A) Documents and tangible objects
(B) Reports of examinations and tests
(C) Expert witnesses: names, addresses and summary of expected testimony
(D) Defense witnesses: names and addresses

*Id.*

---

[9](...continued)
    magistrate courts.

220 W. Va. at 10, 640 S.E.2d at 73, Syl. Pt. 5.

The State argues that the Respondent magistrate clearly exceeded her lawful authority by requiring it to produce information that is not among the express, specific items listed in Rule 29(b) of the West Virginia Rules of Criminal Procedure for Magistrate Courts. The State contends that because the plain language of Rule 29 does not contemplate the production of the discovery sought by the Defendant in the underlying misdemeanor DUI case, the Respondent magistrate acted in direct contravention to the provisions in Rule 29 in ordering the State to produce the discovery.[10] Consequently, the States argues that the circuit court erred in not issuing the writ to prohibit the production of the discovery.

The provisions of Rule 29 do not expressly require the State to produce the precise discovery sought by the Defendant.[11] The State, however, asks this Court to read the

---

[10]While the State argues that the discovery sought by the Defendant was discoverable under Rule 16 of the West Virginia Rules of Criminal Procedure that argument is of no conciliation in this case. The essence of the State's contention is that if the Defendant was only before the circuit court Rule 16 would apply and he would be entitled to the discovery he now seeks in magistrate court. Such a position is untenable. The only possible way for the Defendant to have his case heard in circuit court is on appeal. Unlike with civil cases, there is no statute or rule that allows the Defendant to transfer his criminal case to circuit court. *See* W. Va. Code § 50-4-8 (2008) (concerning removal of civil cases to circuit court). Moreover, in order for the Defendant to get a de novo appeal in circuit court that would afford him the application of Rule 16, rather than Rule 29, he would have to forego his right to a jury trial and have his case tried before a magistrate. *See* R. Crim. P. Mag. Ct. 20.1(d) ("An appeal of a magistrate court criminal proceeding tried before a jury shall be heard on the record in circuit court. An appeal of a criminal proceeding tried before a magistrate without a jury shall be by trial de novo in circuit court without a jury.").

[11]Contrary to the State's position, however, the provisions of Rule 16 of the West Virginia Rules of Criminal Procedure do not expressly require the State to produce the

(continued...)

15

provisions of Rule 29 in a vacuum. The provisions of Rule 29 establish a general framework of discovery that both the State and the Defendant must produce if they "intend[] to use such evidence during any stage of the court proceedings[.]" The rule is not intended to be read in isolation of case law or statutes, nor is it intended to be an exhaustive list of items or information that is otherwise discoverable pursuant to case law or statutes.

Instead, Rule 29 requires the State to disclose not only "[d]ocuments and tangible objects[,]" but also "[r]eports of examination and tests[.]" Further, the rule contemplates that

_____

[11](...continued)
discovery sought by the Defendant. Rule 16 of the West Virginia Rules of Criminal Procedure provides, in pertinent part:

> (C) Documents and tangible objects. – Upon request of the defendant, the state shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, . . . or copies or portions thereof, which are within the possession, custody and control of the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial, or were obtained from or belong to the defendant.

> (D) Reports of examinations and tests. – Upon request of the defendant the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the attorney for the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial.

16

expert witnesses can be used in magistrate court as both the State and the Defendant are required to disclose expert witnesses including names, addresses and summaries of expected testimony. *Id*.

Despite the State's position that it did not intend to offer the information sought by the Defendant in discovery, the State intended to offer the test results from the Intoximeter into evidence to show that after being arrested the Defendant registered a .149 percent blood alcohol content on the secondary chemical test. As provided in West Virginia Code § 17C-5-8(a)(3) (2009), "[e]vidence that there was, at that time, eight hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted as prima facie evidence that the person was under the influence of alcohol." *See* Syl. Pt. 3, *State v. Dyer*, 160 W. Va. 166, 233 S.E.2d 309 (1977) ("Upon the trial of a person arrested for the offense of driving a motor vehicle on a public highway or street of the state while under the influence of intoxicating liquor, evidence of the results of a breathalyzer test, administered in compliance with the requirements of law, showing that there was at the time ten hundredths of one percent [now eight hundredths of one percent] or more, by weight, of alcohol in such person's blood, is admissible as prima facie evidence that the person was under the influence of intoxicating liquor.").

In *State v. Hood*, 155 W. Va. 337, 184 S.E.2d 334 (1971), this Court held,

17

however, that

> [b]efore the result of a Breathalyzer test for blood alcohol administered pursuant to Code, 17C-5A-1 et seq., as amended, is admissible into evidence in a trial for the offense of operating a motor vehicle while under the influence of intoxicating liquor, a proper foundation must be laid for the admission of such evidence.

155 W. Va. 337, 184 S.E.2d at 335, syllabus.  Further, in *Dyer*, the Court also held:

> In the trial of a person charged with driving a motor vehicle on the public streets or highways of the state while under the influence of intoxicating liquor, a chemical analysis of the accused person's blood, breath or urine, *in order to be admissible in evidence in compliance with provisions of W. Va. Code, 17C-5A-5, "must be performed in accordance with methods and standards approved by the state department of health."*[12] When the results of a breathalyzer test, not shown by the record to have been so performed or administered, are received in the trial evidence on which the accused is convicted, the admission of such evidence is prejudicial error and the conviction will be reversed.

160 W. Va. at 167, 233 S.E.2d at 310, Syl. Pt. 4 (emphasis added) (footnote added).

Consequently, when the State seeks to use the results from the Intoximeter, the State must first lay a proper foundation before the results are admissible.  *See Hood*, 155 W. Va. at 337, 184 S.E.2d at 335, syllabus.  Further, under *Dyer*, the State also must demonstrate that the Intoximeter test was "in compliance with provisions of W. Va. Code, 17C-5A-5," and was "performed in accordance with methods and standards approved by the state

---

[12]*See* W. Va. C.S.R. §§ 64-10-1 to -9 (setting forth methods and standards for chemical tests for intoxication).

department of health." 160 W. Va. at 167, 233 S.E.2d at 309, Syl. Pt. 4, in part.

Conversely, given the admissibility of the Intoximeter test results, as the circuit court correctly determined relying upon *Brady v. Maryland*, 373 U.S. 83 (1963), the Defendant has a constitutional due process right to discover and to examine evidence that would tend to exculpate him or could be used for impeachment purposes. In syllabus point four of *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982), this Court held that "[a] prosecution that withholds evidence which if made available would tend to exculpate an accused by creating a reasonable doubt as to his guilt violates due process of law under Article III, Section 14 of the West Virginia Constitution." Further, in *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007), the Court recognized in its holding that *Brady* material covered not only exculpatory evidence, but impeachment evidence as well:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material,[13] i.e.,

---

[13]In *State v. Morris*, 227 W. Va. 76, 85, 705 S.E.2d 583, 592 (2010), the Court relied upon the following definition of materiality used by the United States Supreme Court in *Youngblood v. West Virginia*, 547 U.S. 867 (2006): """"Such evidence is material 'if there is a reasonabl[e] probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different[.]' *Strickler v. Greene*, 527 U.S. 263, 280 [119 S.Ct. 1936, 144 L.Ed.2d 286] (1999)(quoting *Bagley*, *supra*, at 682 [105 S.Ct. 3375] (opinion
(continued...)

19

it must have prejudiced the defense at trial.

*Youngblood*, 221 W. Va. at 22, 650 S.E.2d at 121, Syl. Pt. 2 (footnote added).

In the instant case, because the State intends to use the test results from the Intoximeter to establish the Defendant's blood alcohol content, the State necessarily has brought the reliability of the Intoximeter into question. Even the State concedes in its brief that "a DUI defendant may choose to question whether the testing device was in proper working order on the day it was used on him." The Defendant, therefore, has the right to challenge the State's foundation for admitting the Intoximeter results, as well as the right to challenge whether the test was in compliance with the statute and the protocols approved by the department of health. *See Hood*, 155 W. Va. 337, 184 S.E.2d at 335, syllabus; *Dyer*, 160 W. Va. at 167, 233 S.E.2d at 309, Syl. Pt. 4. To that end, one of the features of the Intoximeter is that it has the capability to store the information sought by the Defendant.

The Respondent magistrate, in ordering the discovery, and the circuit court, in upholding the Respondent magistrate's decision, determined that each of the discovery requests made by the Defendant was both relevant and material. *See State v. White*, 188 W. Va. 534, 536 n.2, 425 S.E.2d 210, 212 n.2 (1992) ("[H]aving held that a court speaks through

_____

[13](...continued)
of Blackmun, J.))[.]" *Morris*, 227 W. Va. at 85, 705 S.E.2d at 592 (quoting Y*oungblood,* 547 U.S. at 869-70).

20

its orders, we are left to decide this case within the parameters of the circuit court's order."). We, therefore, determine that neither the magistrate court nor the circuit court erred in allowing the discovery sought by the Defendant as it is both relevant and material to his case.

## B. Writ of Prohibition

In order for a writ of prohibition to issue, substantial weight is given to whether the lower tribunal's order is clearly erroneous as a matter of law. *Hoover*, 199 W. Va. at 14-15, 483 S.E.2d 14-15, Syl. Pt. 4. Both the Respondent magistrate and the circuit court correctly ordered the discovery sought by the Defendant under both Rule 29 of the Rules of Criminal Procedure for Magistrate Courts, as well as case law. Additionally, the State conceded before the circuit court that its real problem with the discovery ordered by Respondent magistrate was the time parameters ordered by the Respondent magistrate. This concession demonstrated that the discovery dispute was not of the magnitude of "clearly erroneous as a matter of law," that is required for writs of prohibition, but was an "abuse of discretion" standard. The latter is not susceptible to the issuance of an extraordinary writ. *See Sanders*, 192 W. Va. at 603, 453 S.E.2d at 437, Syl. Pt. 2, in part ("'A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court.'"). Finally, under *Lewis*, the State did not meet its burden of demonstrating "that the court's action was so flagrant that it was deprived of its right to prosecute the case or deprived of a valid conviction." 188 W. Va. at 86, 422 S.E.2d at 808, Syl. Pt. 5, in part.

IV.  Conclusion

Based upon the foregoing, the decision of the Circuit Court of Berkeley County is hereby affirmed.

Affirmed.