# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

April 10, 2015

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs) No. 14-0717** (Fayette County 14-F-4)

**Robert J. Alexander,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner and defendant below, Robert J. Alexander, by counsel Christopher S. Moorehead, appeals the June 9, 2014, order of the Circuit Court of Fayette County that sentenced him to one to three years of incarceration for his felony conviction of Third Offense Driving Under the Influence (DUI), and six months of incarceration for his misdemeanor conviction of Obstructing an Officer, following a jury trial. The State of West Virginia, by counsel Christopher S. Dodrill, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On October 8, 2013, petitioner was found unconscious in his locked pick-up truck at 5:30 a.m. in a Wendy's restaurant parking lot in Oak Hill, Fayette County. The truck, with its engine running,[1] was found straddling the lane between the restaurant's drive-thru and parking lot and blocking a refuse worker's access to the restaurant's garbage dumpster. The refuse worker honked his horn and banged on the window of petitioner's truck in unsuccessful efforts to awaken him. The police were notified and Sgt. John McGuire and Officer Grant Hoover of the Oak Hill Police Department arrived at approximately 6:00 a.m. The officers attempted to wake petitioner by knocking on the truck window with their hands and a flashlight. Petitioner woke up and passed out several times before he finally awakened and turned off the engine of his truck.

Upon being ordered out of his truck by the police officers, petitioner stumbled as he exited the truck. The officers testified that they smelled an odor of alcohol and the overwhelming stench of vomit. The officers also observed vomit on petitioner's shirt, an empty liquor bottle on the passenger seat, and an empty two-liter bottle of soda.

---

[1] The vehicle was in gear; petitioner's foot was on the brake.

1

The officers administered three field sobriety tests, all of which petitioner failed. The officers then attempted to administer a preliminary breath test. Following the second attempt, Officer Hoover advised petitioner that it was obvious he was not making an effort to blow into the machine because the machine was not making the sound it usually makes when air is blowing into it. On the third attempt, petitioner actually blew out the straw from the machine towards Officer Hoover with one big breath. No air entered the machine and the test could not register a result.

The officers subsequently advised petitioner that he was under arrest. When they attempted to place him in handcuffs, he vigorously resisted. The officers were ultimately able to restrain him, at which time they transported him to the Oak Hill Police Department. Upon arrival at the police station, the officers attempted three times to administer a secondary breath test via the Intoximeter. Officer Hoover testified that it appeared obvious that petitioner made no attempt to provide a sufficient breath sample. He further testified that after he reminded petitioner that a refusal to provide a breath sample would result in the loss of his driver's license, petitioner appeared more willing to provide a sample. Nonetheless, as with the preliminary breath test, petitioner failed to provide a sufficient breath sample.[2]

On January 15, 2014, petitioner was indicted on the felony offense of third offense DUI and the misdemeanor offense of obstructing an officer. A one-day trial was conducted on March 24, 2014, and the evidence as set forth above was presented. In addition, petitioner presented witness testimony of his friend, Kelly Sears, who testified that when she saw petitioner at the courthouse following his arrest, he did not smell of alcohol or vomit and, further, that he had a scratch on his head and broken ribs. It was petitioner's testimony that he suffered these injuries while the police officers were arresting him. Similarly, petitioner's mother and aunt both testified that they saw petitioner the morning of his arrest and following his release and that they observed a gash on his head but did not smell any alcohol or vomit. Petitioner testified that he drank one beer the day before the incident; that he was not intoxicated; that he has trouble sleeping well at night and is often drowsy; that he had pulled into the Wendy's parking lot on the way to his mother's house because he was tired; that he fell asleep in his truck; that there were no empty liquor bottles in the truck; and that he had no problem completing the three field sobriety tests that were administered to him.

Petitioner was convicted on both counts of the indictment. His subsequent motion for a new trial was denied. Petitioner was sentenced to one to three years in prison on the DUI conviction and six months on the obstruction conviction. This appeal followed.

Petitioner's first assignment of error is that the circuit court erred in denying his February 14, 2014, motion for breath test discovery, which sought to compel the State to produce large amounts of information relating to the operation and maintenance of the particular Intoximeter breath machine for which petitioner failed to provide samples following his arrest. Additionally, petitioner sought information relating to training on the machine and a lengthy list of specific

---

[2] Officer Hoover testified that the machine allows an individual to make two insufficient samples and that, when a third insufficient sample is made, the machine automatically indicates a "refusal," and sends that information to the DMV.

information related to the officer who administered the test, the manufacturer of the machine, the person who maintains the machine, and other information surrounding the use and maintenance of the machine. Following a hearing, the circuit court denied petitioner's discovery motion, finding that the State should not be burdened with producing the voluminous documents requested given that the Intoximeter results showed that petitioner failed to provide a sufficient sample for breath test analysis.

It is well established that, on appeal, "'[a] circuit court's ruling on discovery requests is reviewed [under] an abuse of discretion standard . . . .'" Syl. Pt. 4, in part, *State ex rel. Wausau Bus. Ins. Co. v. Madden*, 216 W.Va. 776, 613 S.E.2d 924 (2005) (quoting Syl. Pt. 5, in part, *State ex rel. Medical Assurance of West Virginia v. Recht,* 213 W.Va. 457, 583 S.E.2d 80 (2003)). *See* Syl. Pt. 8, *State v. Audia*, 171 W.Va. 568, 301 S.E.2d 199 (1983) (stating that "[s]ubject to certain exceptions, pretrial discovery in a criminal case is within the sound discretion of the trial court."). Petitioner argues that, by denying petitioner's motion for breath test discovery, the circuit court precluded him from acquiring potentially exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963), and violated his constitutional due process rights under *State ex rel. Games-Neely v. Overington*, 230 W.Va. 739, 742 S.E.2d 427 (2013). In *Overington*, this Court held that there are three components of a constitutional due process violation under *Brady* and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982):

> "[T]he evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial." Syl. Pt. 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007).

*Overington*, 230 W.Va. at 741, 742 S.E.2d at 429, syl. pt. 7, in part. Petitioner argues *Overington's* three components were satisfied. First, petitioner argues that, given his defense that he had not been drinking alcohol on the night of the incident, any documentation that he had blown into the Intoximeter sufficient to register a sample would "clearly have been exculpatory evidence." Petitioner argues that the second component was also met because the evidence sought was clearly in the possession of the State and was willfully suppressed. Finally, petitioner argues that the third component was satisfied because the requested breath test evidence was material given that the jury may have concluded that petitioner refused to provide a sufficient breath sample because he had a "guilty conscience."

Notwithstanding petitioner's arguments to the contrary, we do not find that petitioner's due process rights were violated by the circuit court's denial of the motion for breath test discovery. Petitioner sought information and documentation relating to the use, maintenance, operation, and training of and on the Intoximeter for which petitioner was unable or unwilling to provide a breath sample. Petitioner's argument that the discovery sought would have been exculpatory[3] is speculative at best, particularly given the overwhelming evidence that petitioner was intoxicated at the time he was discovered unconscious in his truck in the Wendy's parking

---

[3] *See Overington*, 230 W.Va. at 741, 742 S.E.2d at 429, syl. pt. 7.

lot at 5:30 a.m. As previously noted, the truck's engine was running and the vehicle was in gear; the police pounded on the truck's window numerous times before petitioner finally awoke; he stumbled and fell as he exited the vehicle; his vehicle smelled of alcohol; petitioner smelled of vomit, which was also observed by the officers on the front of his clothing; there was an empty liquor bottle on the front seat of the vehicle; and petitioner failed three field sobriety tests. For these same reasons, petitioner's contention that the State's failure to produce the breath test discovery prejudiced him at trial is also without merit. *See Id.* Thus, we find that petitioner's due process rights were not violated and the circuit court did not abuse its discretion in denying petitioner's motion for breath test discovery.

In his second assignment of error, petitioner argues that the circuit court abused its discretion when it granted the State's motion to exclude petitioner's medical records at trial, thereby precluding him from presenting evidence regarding the extent of physical injuries he allegedly sustained when he was restrained by the police. Petitioner argues that, as a result, the jury was precluded from assessing the possible impact his injuries could have had on his inability to provide a sufficient sample for testing by the Intoximeter. This argument is without merit.

This Court has stated that "rulings on the admissibility of evidence . . . are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary . . . rulings of the circuit court under an abuse of discretion standard." *Wells v. Key Commc'ns, L.L.C.*, 226 W.Va. 547, 551, 703 S.E.2d 518, 522 (2010). Prior to trial, petitioner advised the State that he intended to introduce medical records that were purportedly in the custody of Plateau Medical Center. On the morning of trial, the State moved to exclude the medical records because it never received a copy of them. Petitioner conceded that the medical facility had not released the records. The circuit court then stated that, "you don't have them and can't use them[,]" to which petitioner did not object. On appeal, petitioner admits that he failed to proffer to the circuit court the purpose or importance of the medical records. Nonetheless, he now argues, apparently for the first time, that the records "were clearly very important in establishing that [he] may not have been able to provide a sufficient sample due to his inability to blow given broken ribs [sic]."[4] This Court's general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered for the first time on appeal. *Whitlow v. Bd. of Educ. of Kanawha County,* 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993). As we noted in *Whitlow*,

> [t]he rationale behind this rule is that when an issue has not been raised below, the facts underlying that issue will not have been developed in such a way so that a disposition can be made on appeal. Moreover, we consider the element of fairness. When a case has proceeded to its ultimate resolution below, it is manifestly unfair for a party to raise new issues on appeal. Finally, there is also a need to have the issue refined, developed, and adjudicated by the trial court, so that we may have the benefit of its wisdom.

190 W.Va. at 226, 438 S.E.2d at 18. We, therefore, conclude that the circuit court did not abuse its discretion in precluding petitioner's medical records at trial.

---

[4] On appeal, petitioner contends that the medical evidence would have corroborated the testimony of several witnesses who testified that petitioner was hurting and had pain in his ribs following his arrest.

4

In his final assignment of error, petitioner argues that his due process rights were violated by the circuit court's failure to grant his motion to dismiss the indictment on the ground that the magistrate failed to comply with Rule 5.1 of the Rules of Criminal Procedure for Magistrate Courts. Rule 5.1(c) provides, in pertinent part, as follows:

> (1) A magistrate shall record electronically every preliminary examination conducted. If by reason of unavoidable cause it is impossible to record all or part of a preliminary examination electronically, a magistrate may proceed with the hearing but shall make a written record of the failure to do so and of the cause thereof.
>
> . . . .
>
> (2) If probable cause is found at the conclusion of a preliminary examination in magistrate court: . . . (ii) when the proceeding is recorded electronically, the magistrate clerk shall transmit forthwith to the clerk of the circuit court all papers and electronic records of the proceeding; if for unavoidable cause the proceeding or part thereof has not been recorded electronically, the magistrate shall promptly make or cause to be made a summary written record of the proceeding . . . .

In this case, petitioner acknowledges that, during the preliminary hearing and in petitioner's presence, the magistrate and his assistant checked the recording equipment to see that it was working properly. According to petitioner, there was no reason to believe that the equipment was not recording. Nonetheless, when petitioner later requested a copy of the recording, it became clear that the preliminary hearing had not been recorded; furthermore, the magistrate failed to make a summary written record of the proceeding, as required by Rule 5.1. In denying petitioner's motion to dismiss the indictment, the circuit court concluded that defense counsel had a duty to ensure that the proceeding was being recorded and, further, that the apparent malfunction of the recording equipment[5] was not of the nature that would compel the circuit court to dismiss the indictment.

Petitioner argues that the circuit court erred in denying his motion to dismiss the indictment based upon the magistrate's failure to comply with Rule 5.1(c). He contends that the testimony of Officer Hoover at the hearing regarding the circumstances of petitioner's arrest was "very important" exculpatory evidence that petitioner "would certainly have utilized" to impeach him at trial. Petitioner argues that the circuit court failed to address whether Officer Hoover's testimony may have been exculpatory and further failed to consider whether petitioner's due process rights were violated under *State v. Osakalumi*, 194 W.Va. 758, 461 S.E.2d 504 (1995).[6]

---

[5] Petitioner contends that the magistrate's failure to comply with Rule 5.1(c) was "clear negligence" and not intentional.

[6] In syllabus point two of *Osakalumi*, this Court held as follows:

We find no merit to petitioner's argument. Other than his conclusory yet vague declaration that Officer Hoover's preliminary hearing testimony was "very important," exculpatory, and would have been used for impeachment purposes at trial, petitioner fails to identify the nature of Officer Hoover's purported testimony in this regard. This Court has held that

> "'[a]n appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment.' Syllabus Point 5, *Morgan v. Price,* 151 W.Va. 158, 150 S.E.2d 897 (1966). Syllabus Point 2 of *WV Dept. of Health & Human Resources Employees Federal Credit Union v. Tennant,* 215 W.Va. 387, 599 S.E.2d 810 (2004)."

Syl. Pt. 7, *State ex rel. Hatcher v. McBride*, 221 W.Va. 760, 656 S.E.2d 789 (2007).

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 10, 2015

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Menis E. Ketchum
Justice Allen H. Loughry II

---

When the State had or should have had evidence requested by a criminal defendant but the evidence no longer exists when the defendant seeks its production, a trial court must determine (1) whether the requested material, if in the possession of the State at the time of the defendant's request for it, would have been subject to disclosure under either *West Virginia Rule of Criminal Procedure* 16 or case law; (2) whether the State had a duty to preserve the material; and (3) if the State did have a duty to preserve the material, whether the duty was breached and what consequences should flow from the breach. In determining what consequences should flow from the State's breach of its duty to preserve evidence, a trial court should consider (1) the degree of negligence or bad faith involved; (2) the importance of the missing evidence considering the probative value and reliability of secondary or substitute evidence that remains available; and (3) the sufficiency of the other evidence produced at the trial to sustain the conviction.

194 W.Va. at 759, 461 S.E.2d at 505.