600 S.E.2d 294

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Brian Joseph MAISEY, Defendant Below, Appellant.**

No. 31588.

Supreme Court of Appeals of West Virginia.

Submitted: May 25, 2004.

Filed: June 28, 2004.

---

Gary L. Rymer, Esq., D. Luke Furbe, Law Student, Middlebourne, for Appellant.

Darrell V. McGraw, Jr., Attorney General, Colleen A. Ford, Assistant Attorney General, Charleston, for Appellee.

PER CURIAM.

Brian Joseph Maisey, a teenaged boy arrested for having a large knife in his pocket, appeals his conviction for carrying a concealed and deadly weapon. For the reasons set forth below, we reverse and remand with directions.

## I.

### FACTS

This case concerns charges filed against an 18–year–old who was in possession of a butterfly or "gravity" knife. In the early morning hours of March 18, 2001 a Tyler County Sheriff's deputy discovered Appellant Brian Maisey, then age 18, and a group of seven other people in a rural camp or cabin[1] in the Ivers Flats area of Tyler County. The deputy had responded to a call by a neighbor who complained of one Boyd Williamson persistently attempting to enter her house at that odd hour in order to use her telephone.

---

1. From the record it appears that all the relevant events occurred in what might better be described as a cabin (a permanent structure with walls and doors), but which some people might refer to as a "camp" or "hunting camp." This use of the word "camp" should not be confused with a group of tents or any other kind of temporary "camp."

When the deputy arrived at the caller's home, Williamson had already left on foot.

Leaving the house, the deputy saw a truck driving away. The deputy followed the truck and eventually caught up with it after it parked at a nearby camp. The deputy saw a girl sitting in the truck and asked her if she had seen a man walking around on foot. She replied that she had not, but she had seen "a bunch of guys in the camp." The deputy then proceeded to the door of the camp to investigate.

A young man responded to the deputy's knock on the door and, according to the deputy, left the door open and walked back inside after the deputy had explained the purpose of his visit. The deputy walked in, saw a group of eight people (several of them juveniles) and smelled a strong odor of what he believed to be marijuana. The deputy asked if anyone had seen Boyd Williamson and also asked who had been smoking the marijuana. Not surprisingly, nobody answered his questions. The deputy decided to use the phone to call a West Virginia State Trooper, Larry H. Helmick, whom he knew to be the son of the owner of the camp. The deputy then observed some damage to the screen door and a wall.

Reaching the camp about half an hour later, Trooper Helmick and the deputy discussed the situation and decided to frisk everybody in the camp. Later the deputy testified that the reason for the frisk was "a possibility of drugs, small quarters, large numbers," and described it as a "general patdown search, and the reason for that search is basically for officers' safety." During the frisk, the Trooper felt a lump in Maisey's back pocket and discovered a knife. The knife was a so-called "butterfly knife" or "gravity knife" that has a four to six inch blade that is enclosed in a split handle for storage, but that can be flipped open by holding one side of the handle, releasing a catch, and snapping the wrist.

Responding to the officers' questions, Maisey admitted the knife was his, and when asked why he had not told the officers he had it, he stated that he was scared and didn't want to say anything. The knife was the only item seized in the frisk, and the officers took Maisey into custody for carrying a concealed and deadly weapon in violation of W. Va.Code § 61–7–3 (1989).

In April 2001, the case came before the Tyler County Magistrate Court, which issued a pretrial diversion order that continued the case for six months and required Maisey to complete 50 hours of community service, to not violate any laws, and to not have any unexcused absences from school. After several months passed, the prosecutor mailed a letter to Maisey's counsel claiming that Maisey had failed to comply with the pretrial diversion order because he had not provided proof of his community service.[2] On January 18, 2002, the prosecutor filed a motion to terminate the pretrial diversion order and reinstate the criminal complaint and warrant because Maisey had failed to provide proof he had performed the required community service. As a result, the magistrate held a hearing on January 31, 2002.

Even though the pretrial diversion order itself did not require any affidavits, the State avers that Maisey's counsel assured the court that Maisey would provide affidavits from those for whom he had performed community service. For reasons unclear from the record, Maisey did not provide the State with any affidavits. Ultimately the magistrate held a bench trial on August 27, 2002, and found Maisey guilty, fining him $100 plus costs and fees, and sentencing him to 30 days in jail, with only 5 days to be served and the other 25 days suspended in exchange for completion of 50 hours of community service.

Brian Maisey appealed this conviction to circuit court. On December 6, 2002, he filed two motions, one to suppress the evidence of the knife because of an unconstitutional search, and one to dismiss the case because he had already been punished. Ultimately the circuit court denied both motions and found Maisey guilty of the offense of carry-

---

**2.** There was also an allegation that Maisey had not faithfully attended school. It appears that Maisey had been suspended for several days for reasons unrelated to this appeal. We need not address in this opinion whether missing school while suspended would constitute an "un-excused absence" that would violate the pretrial diversion order.

ing a concealed and deadly weapon. The court imposed the same sentence as had the magistrate, $100 fine plus costs, and 30 days in jail, with 25 days suspended, in exchange for 50 hours of community service. The court stayed this sentence pending Maisey's appeal to this court. For the reasons set forth below, we reverse.

## II.

### STANDARD OF REVIEW

 Central to Maisey's argument is an alleged abuse of discretion by the circuit court. As this Court has often noted:

> In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

Syl. Pt. 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997); *accord*, *O'Dell v. Miller*, 211 W.Va. 285, 288, 565 S.E.2d 407, 410 (2002); Syl. pt. 1, *Collins v. Collins*, 209 W.Va. 115, 543 S.E.2d 672 (2000). We recognize that the discretion of a trial court has limits: "We grant trial court judges wide latitude in conducting the business of their courts. However, this authority does not go unchecked, and a judge may not abuse the discretion granted him or her under our law." *Lipscomb v. Tucker County Com'n*, 206 W.Va. 627, 630, 527 S.E.2d 171, 174 (1999).

## III.

### DISCUSSION

 Among the arguments made by Maisey is that the lower court essentially gave him multiple punishments for the same offense, because it refused to accept his evidence that he had completed community service. We pause to note that counsel for Mr. Maisey, aided by a very competent law student, makes persuasive, impassioned arguments that the search was not conducted in accord with *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and that our concealed weapons statute is at odds with our constitutional right to bear arms. Able counsel for the State has responded with a well-written brief and oral argument outlining these important constitutional issues in great detail. However, we do not find it imperative to re-consider our stop and frisk case law, nor necessary to wade into any discussion of the right to bear arms and whether knife owners are treated unfairly with respect to gun owners. We believe this case turns upon the question of whether or not Maisey has performed his community service.

Maisey couches the argument in terms of double jeopardy, pointing out that our Constitution provides in Article III § 5 that, "no person shall ... in any criminal case ... be twice put in jeopardy of life or liberty for the same offense." Maisey goes on to argue that the lower court subjected him to double jeopardy by sentencing him to jail time, a fine, and additional community service after he (according to him) had already completed the community service required by the pretrial diversion order. Maisey presents us with persuasive foreign precedent to support his argument that we should consider a defendant's completion of a pretrial diversion program the equivalent of time served, and thus subject to a double jeopardy analysis. However, we need not go so far in this case.

Our legislature addressed this issue in a statute effective July 1, 2001, and while this effective date means that it would not apply to Maisey's pretrial diversion order dated April 24, 2001, we nonetheless look to the statute for guidance:

> (c) A person who has entered into an agreement for pretrial diversion with a prosecuting attorney and who has successfully complied with the terms of the agreement is not subject to prosecution for the offense or offenses described in the agreement or for the underlying conduct or transaction constituting the offense or offenses described in the agreement, unless the agreement includes a provision that upon compliance the person agrees to plead guilty or *nolo contendere* to a specific related offense, with or without a specif-

ic sentencing recommendation by the prosecuting attorney.

W. Va.Code § 61–11–22(c) (2001). The statute goes on to specify certain offenses that would make a defendant ineligible for such treatment.

■ We believe that this logic, if not the statute itself, should apply to Mr. Maisey's circumstances. We agree that when a person charged with a criminal offense successfully complies with the terms of a pretrial diversion agreement, the State may not prosecute the defendant for that criminal offense, or for the underlying conduct, in the absence of an agreement that the defendant will plead guilty or *nolo contendere* to a related offense. Nothing in this opinion should be seen as conflicting with W. Va.Code § 61–11–22 (2001). Accordingly, we find that the lower court abused its discretion in not either accepting Maisey's evidence, or allowing him an additional opportunity to prove that he had completed the community service.

In the instant case, the Court cannot conclude, however, that Maisey has satisfied the pretrial diversion order. We note that the order did not require affidavits as proof that Maisey had competed his community service. Counsel at argument suggested that Maisey and his family lacked the necessary sophistication to produce notarized affidavits from every person for whom Maisey had worked. The Court is aware that, while notaries public may be in ready supply in a lawyer's office or courthouse, the average citizen might be at a loss to define the term, much less find one. Typically one doesn't even provide a check or receipt to the person who cut the grass, much less notarized proof of the same.

At the same time, we recognize that it is not unreasonable for the State to require some proof that Maisey actually did what he said he did. We note that the State has provided Maisey with significant opportunities to avoid jail. But while we are at a loss as to why Maisey's counsel did not invest the time to see to it that his client had complied with the demands of the prosecutor's office, we believe he should have one last chance to prove that he has completed his community service and complied with the pretrial diversion order.

We think it would be unjust for a young man to end up with a criminal conviction, even a minor one, under the circumstances of this case. The police had responded to a call that somebody was trying to enter a house in the area of the Helmick camp. This had nothing to do with a rural, teenage boy who happened to have a knife in his pocket at the time the police appeared at the camp.

We do not condone Maisey's choice to have the knife, and agree that, if he is unable to provide proof of his community service, he should be subjected to the limited sentence the lower court had imposed. Nonetheless, we also recognize that in a state like our own, as long as there are boys, there will be boys with knives in their pockets. We hope Maisey's example encourages all of them to carry only those that are permitted by our law.

It is a testament to the effectiveness of the police, prosecutors, and courts in Tyler County that the crime rate is very low and that all have the time and resources to dedicate to matters such as this. Although we believe that the police, prosecutor, and courts showed great restraint and acted sensibly in the way they treated this case, we nonetheless find it necessary to reverse.

We conclude that the prosecutor's office should demand in writing what evidence it will find satisfactory, and that Maisey should have 30 days from the receipt of this demand to produce evidence satisfactory to the prosecutor's office that he has completed his community service. In the event that Maisey fails to produce evidence satisfactory to the prosecutor's office, the Circuit Court of Tyler County is directed to impose the sentence described earlier in this opinion.

## IV.

### CONCLUSION

For the reasons stated, the order of the Circuit Court of Tyler County is reversed, and this case is remanded to the circuit court with directions.

Reversed and remanded with directions.