**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 18-0818** (Wood County 17-F-129)

**Jeffrey Lyle Sampson,**
**Defendant Below, Petitioner**

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Jeffrey Lyle Sampson, by counsel Justin M. Collin, appeals the Circuit Court of Wood County's August 24, 2018, order sentencing him to, among other sentences, two consecutive life sentences without the possibility of parole after his conviction of two counts of first-degree murder, in addition to other crimes. Respondent State of West Virginia, by counsel Shannon Frederick Kiser, filed a response. Petitioner filed a reply. At issue in this appeal is whether the circuit court erred in admitting certain evidence of petitioner's prior bad acts at trial.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, petitioner and his wife, Karen Sampson, divorced. Following their divorce, Ms. Sampson continued to reside in the marital home while petitioner took up residence with his parents a short distance away. On the morning of January 10, 2017, Ms. Sampson took the parties' two children to the bus stop and then returned home, where she called her friend Brandy Hardman. While talking to Ms. Hardman over the phone, Ms. Sampson discovered petitioner in her home, at which point petitioner "grabbed [Ms. Sampson] by the neck, pushed her against a wall, . . . held a handgun against her temple" and threatened to kill her. Ms. Sampson screamed and dropped her phone, at which point her call with Ms. Hardman was disconnected. While continuing to "waiv[e] his gun and point[] it at" her, petitioner indicated to Ms. Sampson that he sought to "rekindle" their relationship. In an attempt to buy herself time, Ms. Sampson told petitioner anything she could to calm him down. During the period that petitioner held Ms. Sampson at gunpoint, Ms. Hardman attempted to call her three times. Eventually, Ms. Sampson answered Ms. Hardman's call and told her that she needed help.

1

Accordingly, Ms. Hardman and her husband, Shawn Hardman, drove to Ms. Sampson's home. Upon realizing that the Hardmans were headed to the home, petitioner obtained "a bigger gun" from a bag he carried with him. Upon their arrival, the Hardmans told petitioner to leave. Ms. Hardman took Ms. Sampson to the bedroom and called 9-1-1. Mr. Hardman remained in the living room with petitioner. While in the bedroom, Ms. Sampson hid in a closet, where she eventually heard two gunshots. It is undisputed that petitioner shot Mr. and Ms. Hardman, both of whom died of their wounds. At this point, petitioner left the home and was later arrested after a high-speed car chase.

In 2017, petitioner was indicted on two counts of first-degree murder, one count of kidnapping, two counts of burglary, two counts of felony murder predicated on kidnapping, two counts of felony murder predicated on burglary, one count of use or presentation of a firearm during the commission of a felony, and one count of wanton endangerment involving a firearm. Thereafter, the State filed pretrial notice of its intention to introduce evidence under Rule 404(b) of the West Virginia Rules of Evidence.[1] First, the State sought to introduce evidence of an incident that took place on December 26, 2016. At that time, Ms. Sampson was dating Bill Johnson, who was at her residence when petitioner arrived and yelled at Mr. Johnson as follows: "You can't be here. You need to leave. She's mine. I want to get back with her. I'm trying to rekindle." The evidence established that petitioner shoved Mr. Johnson, pointed a gun at him, and threatened to shoot him. Both Ms. Sampson and Mr. Johnson agreed not to contact the police regarding this incident. Second, the State sought to introduce evidence from December 31, 2016, when petitioner behaved erratically while trying to prevent Ms. Sampson from leaving her home to attend a New Year's Eve party. According to the evidence, Ms. Hardman "act[ed] as a mediator" between petitioner and Ms. Sampson in regard to petitioner's attempts to talk to his son, who expressed no interest in speaking with petitioner. Later that evening, petitioner called Ms. Sampson's friends and yelled that he wanted to speak with his children. The circuit court held a hearing on this evidence and ultimately ruled that it was admissible under Rule 404(b). In turn, the State relied upon this evidence at trial. After the State's introduction of evidence in regard to these incidents, the circuit court provided a limiting instruction to the jury indicating that it could only consider the evidence, in part, "to allow you, the jurors, to see the total picture of all the events and acts leading to the crime alleged."

---

[1]According to Rule 404(b)(2) of the Rules of Evidence, evidence of other prior bad acts

may be admissible for [a] purpose [other than to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Any party seeking the admission of evidence pursuant to this subsection must: provide reasonable notice of the general nature and the specific and precise purpose for which the evidence is being offered by the party at trial; and do so before trial—or during trial if the court, for good cause, excuses lack of pretrial notice.

Ultimately, the jury found petitioner guilty of two counts of first-degree murder, one count of kidnapping, one count of burglary, one count of use or presentation of a firearm in the commission of a felony, and one count of wanton endangerment involving a firearm. After a bifurcated mercy phase, the jury declined to grant petitioner mercy in regard to either of the murder convictions. Petitioner then moved for a new trial and acquittal and renewed his objection to the introduction of evidence regarding his conduct in the weeks leading up to the crimes charged. The circuit court denied this motion and sentenced petitioner to two consecutive life sentences, without the possibility of parole, and an additional aggregate term of incarceration of forty-six to fifty-five years to run consecutively to his life sentences. It is from the circuit court's sentencing order that petitioner appeals.

This Court has previously held as follows:

> "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. West Virginia Ethics Com'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

Syl., *State v. Maisey*, 215 W. Va. 582, 600 S.E.2d 294 (2004). Additionally, "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998). On appeal to this Court, petitioner argues that the circuit court erred in permitting the State to introduce evidence of his conduct in the weeks leading up to the crimes charged. Specifically, petitioner takes issue with the introduction of evidence related to the December 26, 2016, incident in which he arrived at Ms. Sampson's residence and threatened her boyfriend with a firearm because petitioner sought "to rekindle" his relationship with Ms. Sampson, and the December 31, 2016, incident where petitioner tried to prevent Ms. Sampson from leaving her home and yelled at her friends, including Ms. Hardman. We find, however, that this evidence is intrinsic to the crimes charged and, thus, was properly admitted below. Even though the circuit court initially ruled that the evidence was admissible under Rule 404(b), we note that

> "[t]his Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syllabus point 3, *Barnett v. Wolfolk*, 149 W.Va. 246, 140 S.E.2d 466 (1965).

Syl. Pt. 2, *Adkins v. Gatson*, 218 W. Va. 332, 624 S.E.2d 769 (2005). Accordingly, as more fully addressed herein, the Court finds no error in the admissibility of the evidence in question, given that it was clearly intrinsic to the crimes charged.

In addressing the intrinsic evidence, the Court has provided the following direction:

In determining whether the admissibility of evidence of "other bad acts" is governed by Rule 404(b), we first must determine if the evidence is "intrinsic" or "extrinsic." *See United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990): "'Other act' evidence is 'intrinsic' when the evidence of the other act and the evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to the crime charged." (Citations omitted). If the proffer fits in to the "intrinsic" category, evidence of other crimes should not be suppressed when those facts come in as *res gestae*—as part and parcel of the proof charged in the indictment. *See United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980) (stating evidence is admissible when it provides the context of the crime, "is necessary to a 'full presentation' of the case, or is . . . appropriate in order 'to complete the story of the crime on trial by proving its immediate context or the "*res gestae*"'"). (Citations omitted). . . . [E]vidence admissible for one of the purposes specified in Rule 404(b) and *res gestae* not always is separated by a bright line. *See United States v. Cook*, 745 F.2d 1311, 1317-18 (10th Cir.1984), *cert. denied*, 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 347 (1985).

*State v. Dennis*, 216 W. Va. 331, 351, 607 S.E.2d 437, 457 (2004) *(quoting State v. LaRock*, 196 W.Va. 294, 312 n.29, 470 S.E.2d 613, 631 n.29 (1996)). In *Dennis*, the defendant was convicted of kidnapping, second-degree robbery, two counts of second-degree sexual assault, domestic battery, and violation of a domestic violence protective order. *Id.* at 335, 607 S.E.2d at 441. At trial, the State introduced evidence of two prior incidents of domestic violence that the defendant perpetrated upon the victim prior to her death. *Id.* at 352, 607 S.E.2d at 458. In determining that the evidence in question constituted intrinsic evidence, the Court found as follows:

The victim's testimony related various incidents occurring in the three months preceding the events occurring on July 23 and 24, 2001, for which Appellant was indicted. *These incidents were used to demonstrate Appellant's pattern of abusive and controlling behavior as a means of defining the turbulent nature of the relationship the victim had with Appellant after she attempted to break off the relationship with Appellant in late April 2001.* The testimony of the grandmother and law enforcement officers related the events of June 27, 2001, which bore a striking similarity to the July episode and resulted in the arrest of Appellant for violation of a domestic violence protective order. After carefully reviewing the record, we cannot say that the trial court abused its discretion in finding that the prior acts constituted intrinsic evidence, not subject to Rule 404(b) analysis. While the acts were not part of a "single criminal episode" or "necessary preliminaries" to the charged offenses, it is difficult to conclude that the evidence was not necessary "to complete the story of the crimes on trial" or otherwise provide context to the crimes charged.

*Id.* (emphasis added).

Similarly, in *State v. McKinley*, 234 W. Va. 143, 764 S.E.2d 303 (2014), during the defendant's trial for first-degree murder, the State introduced evidence of two incidents of

domestic violence the defendant perpetrated against the victim in the two months prior to her death. *Id*. at 154, 764 S.E.2d at 314. In ruling that the evidence was properly admitted as intrinsic evidence, the Court relied on the holding in *Dennis* and specifically found that, although the defendant in *McKinley* was not charged with domestic battery like in *Dennis*, this was not "sufficient to remove the application of *Dennis* to this case." *Id*. at 156, 764 S.E.2d at 316. Further, the Court ruled that "[a]lthough the two domestic violence incidents in this case were not a 'single criminal episode,' we believe this evidence was necessary to place [the victim's] death in context with her relationship with Mr. McKinley, and to complete the story of the violence Mr. McKinley inflicted on her." *Id.* Turning to the facts of the matter on appeal, we find that the holdings in *Dennis* and *McKinley* are particularly instructive.

At trial in this matter, the State introduced evidence of two incidents that occurred in the month before the crimes for which petitioner was charged that involved his continued attempts to "rekindle" his relationship with Ms. Sampson and his violent behavior—including his tendency to involve a firearm—designed to remove outside influence from Ms. Sampson's life and control her behavior. Additionally, one of the incidents also involved Ms. Hardman, one of the individuals petitioner shot and killed, which illustrated petitioner's interest in removing Ms. Hardman's influence from Ms. Sampson's life. As the Court concluded in *Dennis*, the evidence of petitioner's prior conduct in this case clearly provides context to the crimes charged and was necessary to complete the story of those crimes. In the month leading up to petitioner's crimes, he jealously intervened in Ms. Sampson's new relationship in an attempt to "rekindle" their marriage, pointed a gun at her new boyfriend, yelled at Ms. Hardman after his attempts to prevent Ms. Sampson from leaving her home on New Year's Eve failed, and generally harassed and intimidated Ms. Sampson and Ms. Hardman in an effort to achieve his goal of reunifying with his ex-wife. Just like the cases cited above, this evidence demonstrated petitioner's "pattern of abusive and controlling behavior as a means of defining the turbulent nature of the relationship" Ms. Sampson—one of petitioner's victim's—had with petitioner following their divorce. *Dennis*, 216 W. Va. at 352, 607 S.E.2d at 458. As such, it is clear that the evidence of which petitioner complains was intrinsic to the crimes charged, and we find no error in the circuit court's admission of the evidence below.

While petitioner additionally alleges an assignment of error related to the admissibility of this evidence under Rule 404(b) of the West Virginia Rules of Evidence, it is unnecessary to address the appropriateness of the circuit court's instruction related to Rule 404(b), given that we find that the evidence was intrinsic to the crimes charged. *State v. Harris*, 230 W. Va. 717, 722, 742 S.E.2d 133, 138 (2013) ("This Court has consistently held that evidence which is 'intrinsic' to the indicted charge is not governed by Rule 404(b).").

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** April 6, 2020

**CONCURRED IN BY:**

5

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison